EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Farmacias de la Comunidad y otros<br>     Peticionarios<br><br>           v.<br><br>Departamento de Salud<br>   Recurrido | Certiorari<br><br>2002 TSPR 69<br><br>156 DPR \_\_\_\_ |

Número del Caso: CC-1999-597


Fecha: 23/mayo/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Yvonne Feliciano Acevedo


Abogados de la Parte Peticionaria:
                    Lcdo. David Noriega Rodríguez
                    Lcdo. José A. Ortiz Daliot
                    Lcdo. Nicolás Gautier
                    Lcdo. Heyda Vigil Mc.Clin


Oficina del Procurador General:
                    Lcda. Mayra J. Serrano Borges
                    Procuradora General Auxiliar

                    Lcdo. Héctor Clemente Delgado
                    Procurador General Auxiliar


Materia: Solicitud de Paralización del Reglamento Núm. 89


     Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Farmacias de
la Comunidad y otros

        Peticionarios

            v.                      CC-1999-597      Certiorari

Departamento de Salud

        Recurrido


PER CURIAM
(En Reconsideración)

San Juan, Puerto Rico, a 23 de mayo de 2002.

        Resolvemos la moción de reconsideración presentada por el Departamento de Salud en la que se nos solicita que reconsideremos nuestra Opinión y Sentencia en Asociación de Farmacias de la Comunidad y otros v. Departamento de Salud, res. el 5 de febrero de 2002, 2002 TSPR 13, la cual invalidó el Reglamento Núm. 89 para Regular el Proceso de Evaluación de Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia.

I

        El 5 de febrero de 2002, mediante Opinión del Tribunal, invalidamos el Reglamento Núm. 89 a raíz de los serios defectos de los que adoleció el proceso de reglamentación y por entender que el mismo no satisface el mandato de la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sec. 334 *et seq.*, y las exigencias del debido proceso de ley y de la doctrina de no-delegación por dejar las puertas abiertas a la arbitrariedad y los caprichos, y por no proveer guías adecuadas a los solicitantes de Certificados de Necesidad y Conveniencia.

        Así, advertimos la importancia de que las agencias especifiquen, mediante reglamentación, los criterios

esbozados de forma muy general en la legislación delegatoria, para así evitar una aplicación arbitraria e injusta, y proveer guías adecuadas para que las partes afectadas por las acciones administrativas estén debidamente informadas del estado de derecho vigente. Asociación de Farmacias, *supra*.

Oportunamente, el Departamento de Salud presentó moción de reconsideración en la cual defendió la validez del Reglamento Núm. 89 y cuestionó la determinación de aplicar el Reglamento Núm. 56 a las solicitudes de Certificados de Necesidad que en lo sucesivo se presenten y a aquellas que estén pendientes en el referido departamento. En esencia, argumentó que tal curso de acción afectaría sustancialmente la disponibilidad de servicios de salud en la Isla.

Igualmente, sostuvo que no permitir que se continúen tramitando bajo el Reglamento Núm. 89 las solicitudes de Certificados de Necesidad que estén pendientes ante el Departamento de Salud paralizaría "la oferta de nuevos servicios de salud en Puerto Rico con consecuencias que tal vez en esta etapa ni siquiera se pueden vislumbrar a cabalidad". En vista de ello, nos solicita que reconsideremos nuestro dictamen y que dejemos sin efecto la invalidación del Reglamento Núm. 89. En su defecto, nos plantea que otorguemos vigencia prospectiva a nuestra decisión, sobre todo para aquellas solicitudes que se encuentran pendientes en el Departamento de Salud y en las cuales se haya celebrado o señalado vista adjudicativa cuando esta decisión advenga final y firme.

A los fines de evaluar la referida moción, le concedimos a los peticionarios (Asociación de Farmacias de la Comunidad,

et al.) término para que comparecieran y expresaran su posición; en particular sobre el remedio dispuesto en la Parte VI de nuestra Opinión en Asociación de Farmacias, *supra*, en cuanto a la restitución del Reglamento Núm. 56 y su aplicación a las solicitudes de Certificados de Necesidad y Conveniencia nuevas y a las que estén pendientes en el Departamento de Salud.

En cumplimiento de orden, comparecen los peticionarios y argumentan que, contrario a lo expuesto por el Departamento de Salud, no resulta oneroso utilizar el Reglamento Núm. 56 para las solicitudes de Certificados de Necesidad nuevas y para las que se encuentran pendientes ante la agencia. Así, arguyen que la restitución del Reglamento Núm. 56 es totalmente adecuada y que servirá para delimitar apropiadamente la discreción de la agencia.

Además, señalan que si el Departamento de Salud estima que el Reglamento Núm. 56 no satisface las necesidades del sistema de salud actual le corresponde enmendarlo de conformidad. Por último, sostienen que los problemas que pueda tener dicha agencia con la invalidación del Reglamento Núm. 89 son meramente consecuencia de sus actuaciones ilegales, las cuales debe afrontar y corregir sin limitarse a exponer su preferencia por la ilegalidad del sistema anterior ante su falta de voluntad y capacidad para cumplir con el remedio provisto por este Tribunal. Resolvemos.

II

En esencia, en reconsideración debemos dilucidar si la invalidación del Reglamento Núm. 89 debe tener un efecto prospectivo con respecto a las solicitudes de Certificados de Necesidad que estén pendientes en el Departamento de Salud y

para las cuales se haya celebrado o señalado vista adjudicativa, cuando esta decisión advenga final y firme, para permitir que las mismas puedan continuar tramitándose bajo dicho reglamento.  Veamos.

Al determinar si una decisión judicial, que interpreta un estatuto de Puerto Rico, se aplicará de manera retroactiva son fundamentales las consideraciones de política pública y orden social. Quiles Rodríguez v. Supte. Policía, 139 D.P.R. 272, 277 (1995). Por ello, hemos utilizado como criterios rectores al momento de declarar la retroactividad o prospectividad de una norma jurisprudencial, los siguientes: (1) el propósito que persigue la nueva regla a los fines de determinar si su retroactividad lo adelanta; (2) la confianza que se depositó en la antigua norma, y (3) el efecto de la nueva regla en la administración de la justicia. Dávila v. Antilles Shipping, Inc., 99 TSPR 12, res. el 12 de febrero de 1999; Rexach Const. Co., Inc. v. Mun. de Aguadilla, 142 D.P.R. 85 (1996); Quiles Rodríguez, supra; Gorbea Vallés v. Registrador, 131 D.P.R. 10 (1992). Ello no obstante, la última determinación descansará en las consideraciones de índole social, a la luz de los hechos y las circunstancias particulares de cada caso. Quiles Rodríguez, supra. A fin de cuentas, el darle sólo efectos prospectivos a una decisión, está basado en una actitud de mesura judicial tendente a evitar dislocaciones violentas en un sistema económico que se ha estructurado confiando en un estado de la jurisprudencia.  Rexach Const. Co., Inc., supra; Monclova v. Financial Credit Corp., 83 D.P.R. 770, 787 (1961).

A tenor con estos principios estimamos que, por razones de política pública y a la luz de los aludidos criterios, la

invalidación del Reglamento Núm. 89 debe tener un efecto prospectivo con respecto a las solicitudes pendientes en el Departamento de Salud para las cuales se haya celebrado o señalado vista adjudicativa; permitiendo así que las mismas se puedan continuar tramitando bajo el Reglamento Núm. 89.

La confianza que depositaron las partes en dicho reglamento, bajo el cual tramitan su caso, y el efecto adverso que tendría para el sistema de salud el requerir que solicitudes en una etapa tan avanzada de los procedimientos se comiencen a tramitar bajo nuevos parámetros, justifican que el remedio decretado en Asociación de Farmacias, *supra,* tenga este efecto prospectivo con respecto a las referidas solicitudes. Igualmente, el propósito que se persigue al invalidar el reglamento queda provisionalmente salvaguardado mediante la utilización de los medios profilácticos que más adelante enunciamos para tramitar las solicitudes de Certificados de Necesidad que se encuentren en una etapa tan avanzada.

En fin, a la luz de lo anterior, se accede a lo solicitado por el Departamento de Salud a los únicos efectos de permitir que dichas solicitudes pendientes de adjudicación administrativa (por haberse celebrado o señalado vista adjudicativa) puedan proseguir bajo los parámetros del Reglamento Núm. 89 siempre y cuando las decisiones adjudicativas del referido departamento sean detalladas, razonadas y bien fundamentadas y consistentes con los parámetros establecidos en Asociación de Farmacias, *supra*. Además, dicha agencia se asegurará de mantener un archivo de decisiones sobre este extremo, que el Procurador General nos informa ha sido desarrollado, accesible de suerte que los

solicitantes y el público en general puedan conocer de los fundamentos y detalles de las mismas.

Con respecto a las solicitudes que han sido evaluadas bajo el Reglamento Núm. 89, y aprobadas o denegadas al momento que esta decisión advenga final y firme, y que sean impugnadas o estén siendo revisadas por los tribunales, por aún no ser finales y firmes[1], las mismas serán revisadas de manera consistente con lo establecido en Asociación de Farmacias, *supra*. De esta forma, el Tribunal de Circuito de Apelaciones ha de asegurar que las decisiones adjudicativas del Departamento de Salud, que han sido impugnadas y tiene ante su consideración, sean detalladas, razonadas y bien fundamentadas. Además, el referido foro examinará si dichas decisiones son consistentes entre sí y con los criterios generales que establece la Ley Núm. 2, *supra*. De este modo, el tribunal apelativo podrá constatar que estas decisiones no hayan sido arbitrarias o caprichosas y retiene autoridad para devolver al Departamento de Salud aquellos casos que por su falta de fundamentos requieran de una decisión administrativa detallada y razonada a la luz de lo resuelto en Asociación de Farmacias, *supra.*

Por último, el Departamento de Salud deberá evaluar bajo los parámetros establecidos en el Reglamento Núm. 56 todas las solicitudes de Certificados de Necesidad y Conveniencia que sean sometidas desde que esta decisión advenga final y firme. Igualmente, será de aplicación el Reglamento Núm. 56 para todas

[1] Por supuesto, las decisiones del Departamento de Salud que hayan advenido finales y firmes no se alteran por nuestro dictamen y continuarán teniendo validez plena.

aquellas solicitudes que se encuentren pendientes ante dicha agencia y para las cuales aún no se haya celebrado o señalado vista adjudicativa cuando esta decisión advenga final y firme. Por supuesto, si el Departamento estima que dicho reglamento no está a tono con las exigencias del sistema de salud actual le compete enmendarlo o aprobar un nuevo reglamento, valiéndose de aquellos procedimientos expeditos que la Ley de Procedimiento Administrativo Uniforme provee para estos casos.[2] De la misma forma, también queda dentro de su marco de discreción el procurar la intervención legislativa para formular expeditamente un reglamento que cumpla con los parámetros esbozados en Asociación de Farmacias, *supra*.

Se dictará la Sentencia correspondiente.

---

[2] Véase, Sección 2.13 de la de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 del 12 de agosto de 1988, 3 L.P.R.A. sec. 2133, sobre Reglamentos de Emergencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Farmacias de
la Comunidad y otros

    Peticionarios


       v.             CC-1999-597      Certiorari

Departamento de Salud

    Recurrido


SENTENCIA


San Juan, Puerto Rico, a 23 de mayo de 2002.

    Por los fundamentos expuestos en la Opinión Per Curiam (En Reconsideración) que antecede, la cual se hace formar parte integral de la presente, se declara con lugar la moción de reconsideración presentada por la parte recurrida a los únicos efectos de permitir que las solicitudes de Certificados de Necesidad que estén pendientes en el Departamento de Salud y en las cuales se haya celebrado o señalado vista adjudicativa, cuando esta Sentencia advenga final y firme, puedan continuar tramitándose bajo el Reglamento Núm. 89 siempre y cuando las decisiones adjudicativas del referido departamento sean consistentes con los parámetros establecidos en <u>Asociación de Farmacias de la Comunidad y otros v. Departamento de Salud</u>, res. el 5 de febrero de 2002, 2002 TSPR 13.

    Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río está conforme con lo dispuesto, excepto que disiente que se haga aplicable el Reglamento Núm. 56 a todas las solicitudes de Certificados de Necesidad y

Conveniencia que sean sometidas desde que esta decisión advenga
final y firme y aquellas que se encuentren pendientes y para
las cuales no se haya celebrado o señalado vista adjudicativa
cuando esta decisión advenga final y firme, por entender que
el Reglamento Núm. 89 es válido. El Juez Asociado señor Rivera
Pérez emitió Opinión Disidente.  El Juez Asociado señor Fuster
Berlingeri no intervino.


                    Patricia Otón Olivieri
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Farmacias de
la Comunidad; Colegio de
Farmacéuticos de P.R.,
et als

      Peticionarios

                                       CC-99-597    Certiorari

        v.

Departamento de Salud

      Recurrido

Opinión Disidente emitida por el Juez Asociado señor Rivera
Pérez.

San Juan, Puerto Rico, a 23 de mayo de 2002.

**La Opinión en reconsideración que en el día de hoy formula esta Curia en el presente caso establece que la invalidación del Reglamento Núm. 89 del Departamento de Salud [3] tendrá carácter prospectivo. Como consecuencia, en aquellos casos pendientes de adjudicarse una solicitud de certificado de necesidad y conveniencia, en adelante CNC, ante el Departamento de Salud, en los cuales se haya celebrado o esté señalada la vista adjudicativa al momento de advenir final y firme**

**esta opinión, serán resueltos de acuerdo con el referido Reglamento.**  No obstante, señala la

---

[3] Reglamento Núm. 89 del Departamento de Salud de 24 de septiembre de 1997.

Mayoría que el Departamento de Salud deberá circunscribirse a los criterios establecidos en la Opinión que en este momento reconsidera. **De igual forma, señala la Mayoría que el Departamento de Salud o la Asamblea Legislativa pueden adoptar otros criterios por ley o reglamento que se adapten a las necesidades de nuestro pueblo,** siempre y cuando se apruebe la legislación o el reglamento siguiendo los criterios enumerados en la Opinión del 5 de febrero de 2002.

**Disentimos, muy respetuosamente, por entender que lo formulado en el día de hoy por este Tribunal constituye un acto de dirigir el ejercicio de formulación de política pública, el cual está en contraposición con el principio de separación de poderes que rige nuestra vida democrática. La decisión mayoritaria interfiere con el campo de acción del Poder Ejecutivo, que envuelve la formulación y ejecución de la política pública en el área de la salud. Veamos.**

I

La Ley Núm. 2 de 7 de noviembre de 1975, según enmendada,[4] le otorga al Departamento de Salud la facultad de conceder a determinadas facilidades de salud los CNC que necesitan para operar. El propósito de esta ley es coordinar de manera efectiva la oferta de servicios de salud a la comunidad. La ley dispone que el Departamento de Salud establecerá un reglamento que guiará el proceso de concesión de los referidos certificados.

**En el año 1986 el Departamento de Salud aprobó el Reglamento Núm. 56[5] para regir dichos procedimientos. Este reglamento establecía una serie de criterios que debían ser considerados para conceder un CNC. En agosto de 1997, el Departamento de Salud publicó un aviso en un periódico de circulación general, en donde informaba su intención de aprobar un nuevo reglamento para regular ese procedimiento. Además, advertía sobre el derecho de revisar el texto del proyecto sobre el nuevo reglamento y el término para someter comentarios por escrito o de solicitar vistas**

---

[4] 24 L.P.R.A. sec. 334 et seq.

[5] Reglamento Núm. 56 del Departamento de Salud de 15 de agosto de 1986, según enmendado.

**públicas.   Los peticionarios solicitaron vistas públicas y la agencia se las concedió.**

**Los peticionarios expusieron sus objeciones al referido proyecto en las vistas celebradas.   El Departamento de Salud aprobó el Reglamento Núm. 89, supra, adoptando algunas de las recomendaciones hechas, y lo presentó en el Departamento de Estado.   Los peticionarios acudieron al Tribunal de Circuito de Apelaciones, mediante recurso de revisión judicial.   Dicho foro apelativo intermedio confirmó la determinación de la Secretaria de Salud y dictaminó que el reglamento era válido.**

Inconformes, los peticionarios acudieron ante nos, mediante recurso de Certiorari, alegando, en síntesis, que: (1) el reglamento era nulo por ser vago y ambiguo; (2) que el reglamento era contrario a la ley, en virtud de la cual se aprobó; y (3) no se siguió el procedimiento adecuado durante el transcurso de su aprobación.  El 5 de febrero de 2002, esta Curia emitió la Opinión que en este momento reconsidera, la cual invalidó el Reglamento Núm. 89, supra, aprobado por el Secretario de Salud para regular la concesión de los CNC y dejó en vigor el antiguo Reglamento Núm. 56, supra, que perseguía el mismo fin.

Cuando se emitió la Opinión que hoy se reconsidera, nos unimos a la Opinión Concurrente y Disidente que emitiera el Juez Asociado señor Corrada del Río.  Descargamos nuestro criterio de esa manera, porque entendimos que el Reglamento Núm. 89, supra, es válido, no adolece de vaguedad y se aprobó a tenor con el procedimiento establecido por ley para ello.  **En el día de hoy nos reafirmamos en tal criterio.**  No obstante, habiéndose solicitado oportunamente la reconsideración del referido dictamen por el Departamento de Salud, y contando con la comparecencia de las partes, nos vemos obligados a disentir de la Opinión emitida en este momento, por los fundamentos que expondremos a continuación.

II

El punto de partida de nuestro disenso es el principio de separación de poderes que permea nuestro sistema republicano de gobierno.   Este

principio está contenido en la Sección 2 del Artículo I de la Constitución de Puerto Rico,[6] la cual dispone lo siguiente:

> El gobierno del Estado Libre Asociado de Puerto Rico tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial, según se establecen por esta Constitución, estarán igualmente subordinados a la soberanía del pueblo de Puerto Rico.

Nuestra Constitución establece, de manera expresa, la separación de las tres ramas del gobierno.[7] Cada uno de estos tres poderes realizan una función específica, a saber: el Poder Ejecutivo pone en vigor las leyes; el Poder Legislativo crea las leyes y formula la política pública que regirá los destinos del Pueblo; y la Rama Judicial interpreta las leyes y revisa las actuaciones de las otras dos ramas.[8]

Este principio de la separación de poderes es fundamental en el esquema democrático de gobierno republicano de los Estados Unidos y de Puerto Rico.[9] El mismo garantiza la libertad de los ciudadanos evitando la concentración de poder en una sola de las ramas de gobierno, lo cual conllevaría la tiranía.[10] Además de salvaguardar la libertad ciudadana, **la separación de poderes garantiza la independencia de cada una de las ramas del gobierno y evita que una de las ramas domine o interfiera con las facultades de la otra.**[11] Esto se consigue a través del sistema de pesos y contrapesos que establece el principio de separación de poderes, el cual obliga a las tres ramas a interactuar entre sí, sin abandonar sus funciones y sin invadir el campo de las otras dos.[12] Se ha reconocido que no puede existir la libertad

---

[6] Documentos Históricos, 1 L.P.R.A., Art. I, Sec. 2, pág. 256.

[7] Colón Cortés v. Pesquera, res. el 19 de abril de 2000, 2000 T.S.P.R. 60, 150 D.P.R. ___ (2000), 2000 J.T.S. 72.

[8] Andréu García, José A., La Revisión Judicial de Estados Unidos, Puerto Rico y Europa: Una Perspectiva de Derecho Comparado, 34 Rev. Jur. U.I.P.R. 403 (2000).

[9] Colón Cortés v. Pesquera, supra.

[10] Íd.

[11] Íd.

[12] Andréu García, supra.

si no hay separación entre las tres ramas del gobierno.[13] Esta doctrina no significa que cada rama del gobierno funcionará en total abstracción de las demás, sino que ninguna de las tres ramas de gobierno puede ampliar su autoridad y sus facultades a expensas de otra.[14]

En varias ocasiones se ha sostenido que una rama del gobierno no puede interferir ni usurpar las facultades de otra, sin incurrir en una violación al principio de separación de poderes.[15] Establecido que el principio de separación de poderes permea nuestro esquema constitucional, debemos preguntarnos: ¿cuál es la función de la Rama Judicial en nuestro gobierno? La contestación es sencilla. La Rama Judicial tiene la función de ser el intérprete final de la Constitución y de las leyes de Puerto Rico.[16] Sin embargo, **la función de la Rama Judicial es interpretar la ley, no formular política pública, ni mucho menos dirigir tal ejercicio.**[17] Esa facultad le corresponde a las Ramas Legislativa y Ejecutiva.[18] La Rama Judicial puede revisar las actuaciones de las otras dos ramas del gobierno para determinar si están circunscritas a las disposiciones constitucionales que las limitan y regulan.[19] Este principio de la revisión judicial tiene como base la Constitución de Puerto Rico, que establece que ninguna ley será declarada inconstitucional a no ser por el voto de la mayoría de los jueces que componen este Tribunal.[20] De hecho, la revisión judicial constituye un elemento esencial de la doctrina de separación de poderes, la cual es la base de nuestro sistema democrático.[21] Al ejercer su ministerio, la Rama Judicial

---

[13] Colón Cortés v. Pesquera, supra.

[14] Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998).

[15] Colón Cortés v. Pesquera, supra.

[16] Colón Cortés v. Pesquera, supra; Silva v. Hernández Agosto, 118 D.P.R. 45 (1986); Santa Aponte v. Ferré Aguayo, 105 D.P.R. 670 (1978).

[17] Corraliza v. Bco. Des. Eco., res. el 9 de enero de 2001, 2001 T.S.P.R. 2, 153 D.P.R. ____ (2001), 2001 J.T.S. 5.

[18] Íd.

[19] Silva v. Hernández Agosto, supra.

[20] Documentos Históricos, 1 L.P.R.A., Art. V, Sec. 4, pág. 394.

[21] Andréu García, supra.

debe ser cuidadosa y tener deferencia por el criterio y facultades de las demás ramas.[22]  Después de todo, la Rama Judicial está obligada a respetar la Constitución y los principios que la inspiran y a velar porque su espíritu no se vulnere.[23]

III

Como mencionáramos anteriormente, la Rama Judicial es la encargada de estudiar la ley para determinar si la misma  es válida por no confligir con preceptos constitucionales. Si confligiera, la ley sería declarada inconstitucional.[24]  La Constitución de Puerto Rico establece este principio de la revisión judicial, el cual nació de lo resuelto por el Tribunal Supremo de Estados Unidos en Marbury v. Madison, 5 U.S. 135 (1803).[25]

La revisión judicial tiene que ser ejercitada con cautela.  La razón para esto es que la misma trata sobre la determinación de la constitucionalidad de una ley o acto de gobierno, que ejercitan los poderes gubernamentales electos por el pueblo, por un organismo que no es elegido por el voto popular.[26]  Por eso, el permitir la revisión indiscriminada de las actuaciones de las otras ramas del gobierno trastocaría las bases democráticas de nuestro gobierno.[27]

En cumplimiento con la necesidad de actuar de manera cautelosa al revisar la constitucionalidad de una ley, este Tribunal ha establecido una serie de mecanismos de autolimitación, entre los cuales se incluyen: (1) el requisito de la existencia de un caso o controversia, y (2) de los

---

[22] Silva v. Hernández Agosto, supra.

[23] Íd.

[24] Noriega v. Hernández Colón, 135 D.P.R. 406 (1994).

[25] Noriega Rodríguez v. Jarabo, 136 D.P.R. 497 (1994).

[26] Hernández Torres v. Hernández Colón, 129 D.P.R. 824 (1992); y R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, 1ra ed., San Juan, Universidad Interamericana de Puerto Rico, 1997, T. I.

[27] Noriega Rodríguez v. Jarabo, supra; E.L.A. v. Aguayo, 80 D.P.R. 552 (1958).

criterios de justiciabilidad.[28]  Otro principio que se ha reiterado sobre este asunto en repetidas ocasiones es aquel que promulga que el tribunal se abstendrá de entrar a resolver la constitucionalidad de una ley si existe otro fundamento sobre el cual pueda resolverse la controversia, o si existe una interpretación alterna que permita sostener la validez de la misma.[29]

La Rama Judicial es la encargada de interpretar y aplicar la ley.[30] Este ejercicio puede aclarar las lagunas o áreas oscuras que existan en la misma.[31]  Sin lugar a dudas, la razón para adoptar la doctrina de autolimitación judicial que rige en Puerto Rico es el deseo de evitar trastocar nuestro esquema constitucional de separación de poderes.  A esos efectos, nos expresamos en E.L.A. v. Aguayo, supra, de la manera siguiente:

...

> ¿Qué fundamento tienen esas limitaciones?  ¿Han sido creadas para satisfacer las exigencias de un preciosismo técnico, o están por el contrario sustentadas por una convicción, a la cual abonan la razón y la experiencia, de cómo debe ejercitarse la gravísima responsabilidad judicial de juzgar la constitucionalidad de las actuaciones legislativas?  Es indudable que constituyen un mínimo de condiciones para el ejercicio discreto y tolerable de un poder que de otro modo constituiría una clara amenaza para la calidad democrática del sistema y convertiría a los jueces en guardianes de la comunidad. Factores determinantes de estas normas son la falibilidad del juicio humano, la condición negativa del poder judicial que no posee la autoridad directa que adviene a las otras dos ramas por ser electas por el pueblo, y la convicción de que la Corte perdería su influencia y prestigio y finalmente su autoridad, si, a diario, y fuera de los estrictos límites de un genuino procedimiento judicial, estuviese pasando juicio sobre la validez constitucional de las actuaciones legislativas y ejecutivas.

...

De igual manera, el ejercicio de la facultad de interpretar y aplicar la ley, de la cual está investida la Rama Judicial, no es absoluto ni está libre de restricciones.  Al interpretar y aplicar la ley, la Rama Judicial

---

[28] E.L.A. v. Aguayo, supra.

[29] Nadal v. Depto. Rec. Nat., res. el 7 de abril de 2000, 2000 T.S.P.R. 59, 150 D.P.R. ___ (2000), 2000 J.T.S. 71; Srio. D.A.C.O. v. Comunidad San José, Inc., 130 D.P.R. 782 (1992); y E.L.A. v. Aguayo, supra.

[30] Corraliza v. Bco. Des. Eco., supra.

no puede sustituir su criterio por el del legislador.  En <u>Alejandro Rivera v. E.L.A.</u>,[32] citando a Bernier y Cuevas Segarra, nos expresamos sobre este aspecto de la manera siguiente:

> ... El Poder Judicial ejercitado por los tribunales consiste en el ejercicio de las facultades de resolver los litigios a través de la interpretación de la ley.  En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos.  Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa.  Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable.
>
> ...

En el referido caso puntualizamos que estamos impedidos de usurpar el campo de la Rama Legislativa al ejercitar nuestra facultad constitucional. De igual forma, y por analogía, no disponemos de facultad para invadir el campo de acción del Poder Ejecutivo en su ministerio de formular política pública.  **La razón es sencilla, el principio de la separación de poderes sobre el cual está estructurado nuestro esquema constitucional nos lo impide.**

**No hay duda de que las agencias administrativas, las cuales forman parte del Poder Ejecutivo, realizan labores de formulación de política pública. Dicha función le ha sido delegada por la Rama Legislativa.  La razón de ser para esta delegación es la complejidad de las funciones que tiene que realizar el gobierno y la flexibilidad que dichas agencias le brindan al mismo.  A esos efectos expresamos en <u>M. & B. S., Inc. v. Depto. de Agricultura</u>,[33] lo siguiente:**

> **La función del gobierno durante este siglo se ha transformado de una entidad pasiva que rendía ciertos servicios, a una muy activa que realiza una multiplicidad de actividades. Actualmente regula la conducta privada en una variedad de fases: impone contribuciones, concede distintos tipos de beneficios económicos como subsidios, viviendas u otros bienes, y provee los servicios tradicionales como seguridad, educación y salud.** Para que el estado moderno cumpla cabalmente con sus responsabilidades, la Asamblea Legislativa ha delegado extensamente poderes tanto cuasi legislativos como cuasi

---

[31] Íd.

[32] 140 D.P.R. 538 (1996).

[33] 118 D.P.R. 319, 325 (1987).

judiciales a las agencias administrativas. Así se originó lo que se ha considerado uno de los más importantes y novedosos desarrollos del gobierno moderno: la reglamentación administrativa. **(Citas omitidas; énfasis nuestro.)**

**La reglamentación administrativa constituye una parte fundamental de los poderes de la Rama Ejecutiva, los cuales son delegados por la Asamblea Legislativa a agencias que pertenecen a esa rama de gobierno, buscando promover la eficiencia gubernamental. Esta delegación es realizada dentro de unas normas generales establecidas por la Legislatura, por las que la agencia tendrá que guiarse al aprobar la reglamentación.[34] Mediante el ejercicio de ese poder delegado, las agencias aprueban reglas y reglamentos que rigen la vida de los ciudadanos, lo cual constituye un ejercicio de formulación de política pública.[35] De la misma forma, la agencia podría formular política pública mediante sus facultades adjudicativas o cuasijudiciales.[36]**

**Como cuestión de realidad, la Rama Legislativa le delegó al Secretario de Salud la facultad de aprobar un reglamento que estableciera los requisitos y criterios para otorgar un CNC. A esos efectos, el artículo 3 de la Ley Núm. 2 de 7 de noviembre de 1975,[37] establece lo siguiente:**

> **El Secretario [de Salud] establecerá mediante reglamento los criterios para expedir o denegar el certificado de necesidad y conveniencia. Al establecer dichos criterios el Secretario tomará en consideración las guías generales establecidas en la ley federal y en las secs. 334 a 334j de este título, conforme a la política pública y estrategia de desarrollo adoptada por la Junta de Planificación, incluyendo el Plan de Desarrollo Integral.**

> ...

**Es al amparo de esta delegación expresa que el Secretario de Salud aprobó el Reglamento Núm. 89, supra. Habiéndose declarado inválido por este Tribunal dicho reglamento, el Secretario de Salud está facultado por ley para aprobar otro que regule el procedimiento para conceder los CNC. Al**

---

[34] M. & B. S., Inc. v. Depto. de Agricultura, supra.

[35] D. Fernández Quiñónez, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., San Juan, Ed. Forum, 2000.

[36] Íd.

así actuar, realizaría un ejercicio de formulación de política pública, por delegación expresa del Poder Legislativo. La intervención de este Tribunal con los criterios que utilice el Secretario de Salud para formular la política pública sobre el área de la salud es una que incide sobre el radio de acción de las otras dos ramas del gobierno.

## IV

Los tribunales tienen la facultad para declarar inválidos los reglamentos aprobados por las agencias administrativas. A esos efectos, la Ley de Procedimiento Administrativo Uniforme, en su sección 2.7,[38] establece, en lo pertinente, lo siguiente:

...

> (b) Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de este capítulo deberá iniciarse en el Tribunal de Circuito de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá al Circuito de la región judicial donde está ubicado el domicilio del recurrente.

...

Los tribunales tienen la facultad de determinar sobre la validez de los reglamentos aprobados por las agencias administrativas. Sin embargo, esta facultad no es absoluta. En primer lugar, al revisar las determinaciones de una agencia administrativa, entre las cuales se encuentra la aprobación de reglamentos, los tribunales deben tener deferencia por la determinación que realiza la agencia en atención al conocimiento especializado que poseen en su área.[39] En segundo lugar, la revisión judicial de la reglamentación aprobada por una agencia administrativa no recae sobre la deseabilidad o inteligencia de la misma. Dicho procedimiento se limita a que se haya aprobado conforme a la ley y que no hayan mediado actuaciones arbitrarias o ilegales por parte de la agencia.[40] Hemos

---

[37] 24 L.P.R.A. sec. 334b.

[38] 3 L.P.R.A. sec. 2127.

[39] Rivera Concepción v. A.R.P.E., res. el 29 de septiembre de 2000, 2000 T.S.P.R. 143, 152 D.P.R. ____ (2000), 2000 J.T.S. 155.

establecido los criterios a que tiene que circunscribirse la Rama Judicial al revisar la reglamentación administrativa.[41]  En <u>Luan Investment Corp. v. Román</u>, <u>supra</u>, [42] citando a <u>M. & B. S., Inc. v. Depto. de Agricultura</u>, <u>supra</u>, expresamos lo siguiente:

> No obstante, lo que actualmente se requiere como medida fiscalizadora es que las agencias aprueben reglamentos que delimiten o precisen sus facultades al amparo de la ley y así evitar actuaciones ilegales o arbitrarias.  La función de los tribunales generalmente ha de ir dirigida a evaluar: (1) si la actuación administrativa está autorizada por la ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales, y (5) si la reglamentación es arbitraria o caprichosa.  (Citas omitidas.)

La Opinión Mayoritaria, que en este momento es reconsiderada, se apoyó para declarar inválido el Reglamento Núm. 89, <u>supra</u>, en el hecho de que éste no proveía criterios detallados para la concesión de un CNC, como el Reglamento Núm. 56, <u>supra</u>, el cual sustituyó.  Nos ratificamos en nuestra posición original, por entender que los criterios vertidos en el Reglamento Núm. 89, <u>supra</u>, invalidado son suficientes para dirigir la discreción administrativa.  La aprobación de ese reglamento constituyó un ejercicio válido de formulación de política pública por parte del Poder Ejecutivo, cuyo propósito era facilitar el proceso de concesión de los CNC.  No nos correspondía, como entendemos hizo la Mayoría en aquel momento, pasar juicio sobre la sabiduría de la formulación de la política pública realizada por el Poder Ejecutivo en el área de la salud.  Esa no es nuestra función dentro de nuestro esquema constitucional.

La Mayoría en este momento incurre en un acto encaminado a dirigir al Poder Ejecutivo, elegido por el Pueblo, sobre la manera en que deberá formular e implantar la política pública sobre el área de la salud y los criterios que debe utilizar en ese proceso.  Aunque la Opinión Mayoritaria, consecuencia de la solicitud de reconsideración, persigue impartir carácter

---

[40] <u>Luan Investment Corp. v. Román</u>, 125 D.P.R. 533 (1990); <u>Aulet v. Depto. Servicios Sociales</u>, 129 D.P.R. 1 (1991).

[41] <u>Luan Investment Corp. v. Román</u>, <u>supra</u>; <u>M. & B. S., Inc. v Depto. de Agricultura</u>, <u>supra</u>.

**prospectivo a lo ya resuelto en este caso,** su resultado es el de dirigir al Departamento de Salud al resolver en los méritos toda aquella solicitud de CNC en la que se haya celebrado vista adjudicativa o que esté señalada la misma. Apercibe al Departamento de Salud que al aprobar un nuevo reglamento tiene que circunscribirse a lo resuelto en la Opinión que hoy reconsidera.

**La Mayoría toma un rumbo alejado de la función constitucional de esta rama de gobierno. Le instruye al Secretario de Salud que, en los casos aplicables, resuelva la solicitud de CNC de acuerdo con el Reglamento Núm. 89,** <u>supra</u>**, y que la decisión que emita debe ser específica y detallada, a tenor con la Opinión dictada por este Tribunal el 5 de febrero de 2002. Aunque le indica al Secretario de Salud que podrá utilizar el Reglamento Núm. 89,** <u>supra</u>**, dicho funcionario en la práctica tendría que aplicar aquellos otros criterios enumerados en la Opinión que en este momento reconsidera, o sea, la resolución a emitirse por el Departamento de Salud con relación a una solicitud de un CNC deberá formularse de acuerdo con los criterios esbozados en el antiguo Reglamento Núm. 56,** <u>supra</u>**, el cual la Mayoría considera que es el apropiado para regular la concesión o denegación de los CNC. Este Tribunal le instruye a los Poderes Ejecutivo y Legislativo que, de determinar la necesidad de aprobar algún estatuto o reglamento para subsanar la situación que describe, tienen que cumplir con lo resuelto en la Opinión emitida el 5 de febrero de 2002 en el caso que hoy nos ocupa.**

**Lo aquí actuado por la Mayoría constituye un mandato al Poder Ejecutivo, electo por el pueblo, para que formule política pública, a tenor con el criterio de lo que entiende más sabio e inteligente para el área de la salud.** La Constitución de Puerto Rico no nos permite abrogarnos esa facultad. **Si la Mayoría entiende que el Reglamento no es válido y que la aplicación de la norma debe ser prospectiva, la facultad de este Tribunal entendemos llega hasta el punto de determinar su invalidez. No es parte de nuestra facultad constitucional el emitir guías o directrices al Poder Ejecutivo sobre la forma en que éste ha de formular la política pública sobre un área de interés**

---

[42] Pág. 550.

público para la ciudadanía.  Al así actuar, este Tribunal lastima peligrosamente nuestro esquema democrático constitucional de gobierno.

V

Por los fundamentos antes expuestos, disiento de la Opinión Mayoritaria.


Efraín E. Rivera Pérez
Juez Asociado