*630 TEXTO COMPLETO DE LA SENTENCIA
Mediante escrito de Revisión Judicial, comparece Bio Medical Applications of Bayamón (en adelante, BMA) y nos solicita que revoquemos una determinación del 20 de febrero de 2008, notificada el 21 del mismo mes y año. Mediante ésta, el Departamento de Salud concedió a la Dra. María Teresa Morales Báez (en adelante, la recurrida) un Certificado de Necesidad y Conveniencia (en adelante, CNC) para el establecimiento de una facilidad de diálisis renal en la sub-región de Bayamón, Puerto Rico.
Analizada la controversia ante nosotros y la normativa aplicable, se confirma la determinación recurrida.
I
Los hechos que originan la presente controversia son los siguientes:

“El 13 de enero de 2005, la recurrida presentó una solicitud de Certificado de Necesidad y Conveniencia (CNC) ante la Secretaría de Acreditación y Reglamentación de Facilidades de Salud (en adelante, SA.RA.F. S.) para el establecimiento de una facilidad de hemodiálisis ambulatorio que tendría el nombre M. T.M. Renal Center (en adelante, M.T.M.) a ubicarse en Bayamón. ”

A tenor con lo anterior, el Departamento de Salud emitió las notificaciones de rigor, siendo convocadas al proceso de concesión del CNC todas las agencias de servicios de salud en el hogar que operaban en el área.
Comparecieron, oportunamente, el Centro Renal de Bayamón y BMA. Posteriormente, Atlantis Health *631 Group, P.R. Inc. (Atlantis) solicitó comparecer como parte opositora, toda vez que operaba una facilidad de diálisis en el Municipio de Toa Alta, que forma parte del área de servicio de la facilidad propuesta. El Departamento de Salud accedió a dicha solicitud.
La vista administrativa se celebró el 7 de junio de 2007 y se extendió los días 15 y 24 de agosto de 2007. En esta se evaluó la propuesta de la recurrida. Durante la misma, testificaron el Dr. Edwin Mora, propuesto Director Médico para M.T.M., el Sr. Marcelino Prieto, vendedor de equipo de diálisis, Sra. Claudia Guzmán, funcionaría del Hospital HIMA-San Pablo, Sra. Nancy Berrios, perito sobre facilidades de salud, el Ing.-Antonio Martínez de Andino, perito económico y la recurrida.
Por BMA testificaron el Dr. Angel Rivera, Director Médico de la Unidad de Diálisis Ambulatorio de BMA en Bayamón y el Ledo. Luis Emanuelli, Vicepresidente Regional de BMA. Por Atlantis testificó la Sra. Madeline Vega, Contralor de Atlantis.
Rendido el informe de la oficial examinadora a cargo del caso, la Secretaria del Departamento de Salud adoptó dicho informe y emitió resolución el 20 de febrero de 2008 concediendo un CNC para el establecimiento de una facilidad de diálisis renal en la sub-región de Bayamón, Puerto Rico.
En síntesis, el Departamento de Salud señaló que el establecimiento propuesto por la recurrida cumplía con todos los criterios específicos y generales establecidos por nuestro ordenamiento jurídico. Añadió que su propuesta beneficiaría a la comunidad de pacientes renales y añadiría conveniencia y comodidad en la adquisición de servicios de salud del área que al presente tienen que desplazarse a otras áreas, tres veces en semana para recibir sus tratamientos. Los proveedores de servicios de salud tendrían alternativas competitivas donde referir sus pacientes, con las economías que esto tendría para el paciente, los planes médicos y los hospitales. Señaló que la transacción propuesta generaría empleos de servicios de salud y su efecto multiplicador añadiría beneficios a un área con necesidad de oportunidades de desarrollo.
Inconforme, el 7 de marzo de 2008, Atlantis, Inc. presentó una Moción de Reconsideración. Posteriormente, el 12 de marzo de 2008, BMA también solicitó la reconsideración de la determinación emitida.
Transcurrido el término concedido por la ley, sin que el Departamento de Salud se pronunciara en relación con la referida solicitud, BMA acude ante este foro en revisión judicial.
En su escrito, plantea que el Departamento de Salud cometió los siguientes errores:

“Erró el Departamento de Salud al conceder el CNC solicitado por la parte recurrida, a pesar de no haberse establecido en la vista todos los criterios reglamentarios necesarios para la concesión de un CNC.

Erró el Departamento de Salud al tomar conocimiento oficial de otros expedientes administrativos sin que le fuera solicitado por ninguna de las partes y sin que se le permitiera a la parte refutar dicha prueba.”

Evaluados los escritos presentados por las partes a la luz de la normativa aplicable, procedemos a resolver. Veamos.
II
Examinemos el derecho aplicable a la cuestión planteada en este recurso.
A
La concesión y denegación de certificados de necesidad y conveniencia por el Secretario de Salud está *632 gobernada por la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. see. 334 et seq., y mediante el Reglamento Núm. 56, aprobado el 15 de agosto de 1986, según dispuesto en Asoc. Fcias. Com. v. Dpto. de Salud, 157 D.P.R. 76 (2002).
Dichos preceptos facultan al Secretario de Salud para otorgar certificados de necesidad y conveniencia para el establecimiento de nuevas facilidades de salud, cuando ello sea necesario'y conveniente para la población qüe dichas facilidades van a servir, siempre que no se afecten indebidamente los servicios existentes. Se contribuye así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico. 24 L.P.R.A. see. 334; Lab. Inst. Med. Ava. v. Lab. C. Borinquen, 149 D.P.R. 121 (1999).
Al otorgar o denegar un certificado de necesidad y conveniencia, el Secretario de Salud no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud. En este sentido, su dictamen afecta no sólo al peticionario, sino ál área de salud de que se trate teniendo efectos generales y regionales. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra; Ruiz Hernández v. Mahiques, 120 D.P.R. 80 (1987). Se trata de una decisión personal de dicho funcionario que representa la culminación de un proceso evaluativo institucional que combina aspectos de reglamentación y adjudicación, y que requiere la evaluación de muchas circunstancias y factores complejos, y la ponderación de criterios diversos. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra, a la pág. 132; Hosp. San Pablo v. Hosp. Hnos. Meléndez, 123 D.P.R. 720 (1989).
El Artículo 3 de la Ley establece los criterios generales a ser considerados por el Secretario de Salud en su evaluación de una solicitud de certificado de necesidad y conveniencia. Estos incluyen: (1) la relación entre la transacción para la cual se solicita .el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante; (2) la necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán; (3) la existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante; y (4) la relación entre el sistema de salud operante en el área y la transacción propuesta. 24 L.P.R.A. sec. 334b; Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra, a la pág. 128.
El precepto añade que cuando se trata de una solicitud para el ofrecimiento de servicios de salud, deberán, considerarse también: (a) la disponibilidad de recursos humanos y económicos para el rendimiento eficiente de los servicios; (b) el impacto en que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del área donde los servicios habrán de prestarse; y (c) el por ciento de la población del área a ser servida que tendrá acceso a los servicios propuestos. Id.
Por otra parte, con el propósito de establecer el procedimiento para el recibo y evaluación de solicitudes ■ para el otorgamiento de CNC, el Secretario de Salud aprobó el Reglamento Número 112 para regir el Proceso de Evaluación de Solicitudes para el Otorgamiento de CNC de 9 de marzo de 2004. [1]
El Reglamento 112, supra, (en adelante, el Reglamento), define el CNC como aquel “documento emitido por el Secretario de Salud, que autoriza a una persona a llevar a cabo cualesquiera de las actividades cubiertas por este Reglamento y la Ley Núm. 2, supra, y que certifica que dicha actividad es necesaria para la población a la que va a servir; no contribuirá a aumentar los costos de ese tipo de servicio y na afectará indebidamente los servicios ya existentes en el área a ser servida, por lo que va a contribuir al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico
El procedimiento para el recibo y evaluación de solicitudes está regulado por el Artículo V del Reglamento. A su -vez, el inciso 2c del mismo dispone que toda solicitud deberá presentarse por escrito, utilizando el formulario que a esos fines haya dispuesto el Departamento de Salud y presentar original y copia en S.A.R.A.F. *633 s.
Por otro lado, el inciso 3 del Artículo V establece que si una solicitud careciera de algunos de los requisitos de presentación S.A.R.A.F.S., no podrá darle curso, y le notificará al proponente para que en un término máximo de quince (15) días subsane o complete la misma. Pasado dicho término sin que se reciba la información, entonces procederá su archivo sin perjuicio.
Por otra parte, el Artículo VI del Reglamento dispone las guías generales sobre evaluación de solicitudes para obtener un CNC. En el proceso, el Secretario de Salud tomará en cuenta criterios generales al evaluar la solicitud de un CNC, disponiéndose que mantendrá la discreción necesaria para sopesar y examinar dichos criterios de modo que facilite el poner en vigor las disposiciones de la Ley Núm. 2, supra, y la política pública del Departamento.
Además, el Secretario deberá utilizar criterios evaluativos particulares adicionales según la facilidad de salud propuesta.
Así pues, el proponente de un Centro de Diálisis Renal debe proveer con su solicitud la información requerida a esos fines. Los criterios particulares al momento de evaluar una solicitud referente a esta facilidad de salud son los siguientes: (1) se considerara la necesidad de establecer una facilidad de diálisis renal cuando las establecidas en el área de servicio de salud propuesta, estén operando tres (3) turnos, con un 80% de utilización sobre una base anual; (2) las facilidades existentes deberán estar operando un mínimo de dos turnos diarios, seis veces por semana. Cada tumo tendrá como promedio de 3-4 horas por tratamiento; (3) todo centro deberá contar con no menos de 15 estaciones de hemodiálisis; (4) la facilidad propuesta deberá estar a 15 minutos de una facilidad hospitalaria y deberá demostrar que cuenta con un contrato de apoyo con un hospital que esté a esa distancia, en tiempo; (5) la necesidad de una facilidad estará basada en la tasa de incidencia y prevalencia de pacientes con enfermedades renales permanentes para el año pertinente y en el área de salud donde se contemple establecer el servicio. Esta necesidad deberá poderse validar con el Consejo Renal de Puerto Rico o cualquier otra entidad reconocida que disponga de estadísticas de la incidencia de enfermedades renales en Puerto Rico; y (6) para aprobar cualquier aumento en el número de estaciones autorizadas de una facilidad existente, se tendrá que demostrar que el mismo no conlleva un exceso de oferta para el área de servicio.
Por último, es preciso recalcar que al hacer una interpretación contextual de la Ley Núm. 2, supra, el Tribunal Supremo ha expresado que “claramente revela, que el legislador dejó en manos del Secretario la determinación de conceder o denegar los certificados requeridos, sujeto a unas guías y criterios, que aparejan un ámbito de discreción”. Dichas guías ciertamente delimitan su ámbito de discreción, sin pretender ser una “camisa de fuerza para restringir innecesariamente la propia facultad que le delega la Ley Núm. 2, para expedir o denegar los referidos certificados”. Véase, Lab. Inst. Med. Ava. v. Lab. C. Borinquen, 149 D.P.R. 121 (1999).
Conforme a lo anterior podemos colegir que nuestro más alto foro ha reconocido en términos claros que el Secretario de Salud tiene la discreción de denegar o conceder un CNC, aun cuando la solicitud no llene uno o más de los criterios aplicables, si ello es necesario y conveniente. Es decir, el Secretario “[tjiene discreción, para obviar un criterio reglamentario, cuando ello sea procedente ”. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra.
B
En cuanto al alcance de nuestra función revisora, en repetidas ocasiones nuestro Tribunal Supremo ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con la experiencia y con el conocimiento especializado de *634 los asuntos que les son encomendados. Municipio de San Juan v. Plaza Las Américas, 169 D.P.R. _ (2006), 2006 J.T.S. 164; López v. Administración, 168 D.P.R. _ (2006), 2006 J.T.S. 146; Hernández v. Centro Unido, 168 D.P.R. _ (2006), 2006 J.T.S. 140; Otero v. Toyota, 163 D.P.R. 716 (2005); Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. 69 (2004); Pacheco Torres v. Estancias de Yauco, 160 D.P.R. 409 (2003).
Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. López v. Administración, supra; Camacho v. A.A.F.E.T., 168 D.P.R. _ (2006), 2006 J.T.S. 97; Rebollo Vda. de Liceaga v. Yiyi Motors, supra. Los tribunales no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. López v. Administración, supra; Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P.R. 387 (1999).
Las determinaciones de hechos de organismos y agencias “tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas”. Camacho v. A.A.F.E.T., supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194 (1987).
El tribunal podrá sustituir el criterio de la agencia por el propio, sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. Otero v. Toyota, supra.
Además, no debe concederse deferencia judicial cuando el tribunal revisor se encuentra ante una interpretación estatutaria de la agencia administrativa que afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de una injusticia. Martínez Segarra v. Rosado Santoni, 165 D.P.R. _ (2005), 2005 J.T.S. 132; Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881 (1992). Es cuando la agencia interpreta el estatuto que viene obligada a poner en vigor de manera tal que produce resultados contrarios al propósito de la ley. Por ello, su errada interpretación no puede prevalecer y los tribunales vienen obligados a corregirla. Martínez Segarra v. Rosado Santoni, supra; Mun. de San Juan v. J.C.A., 149 D.P.R. 263 (1999).
La propia Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico dispone que “jijas conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". El razonamiento detrás de esta disposición, es que los tribunales gozan del peritaje en cuanto a las cuestiones legales por lo cual no se adelanta ningún fin público dándole deferencia a la agencia en cuanto a este aspecto.” O.E.G. v. Igartúa de la Rosa, 157 D.P.R. 826 (2002); San Antonio Maritime v. P.R. Cement, Co., 153 D.P.R. 374 (2001); Miranda v. C.E.E., 141 D.P.R. 775 (1996).
III
En síntesis, lo que debemos determinar es si erró el Departamento de Salud al concederle un CNC a la recurrida con el fin de establecer una facilidad de diálisis renal en la Sub-Región de Bayamón.
Aquilatados los planteamientos de las partes en sus respectivos alegatos, así como el derecho aplicable a la controversia, entendemos que no incidió el Departamento de Salud al conceder la expedición del CNC a la recurrida. Veamos porqué.
Como mencionáramos con anterioridad los requisitos a considerarse para la expedición de un CNC son los siguientes: (1) se considerará la necesidad de establecer una facilidad de diálisis renal cuando las establecidas.en el área de servicio de salud propuesta, estén operando tres (3) turnos, con un 80% de utilización sobre una base anual; (2) las facilidades existentes deberán estar operando un mínimo de dos turnos diarios, seis veces por semana. Cada turno tendrá como promedio de 3-4 horas por tratamiento; (3) todo centro deberá contar con no menos de 15 estaciones de hemodiálisis; (4) la facilidad propuesta deberá estar a 15 minutos de una facilidad *635 hospitalaria y deberá demostrar que cuenta con un contrato de apoyo con un hospital que esté a esa distancia, en tiempo; (5) la necesidad de una facilidad estará basada en la tasa de incidencia y prevalencia de pacientes con enfermedades renales permanentes para el año pertinente y en el área de salud donde se contemple establecer el servicio. Esta necesidad deberá poderse validar con el Consejo Renal de Puerto Rico o cualquier otra entidad reconocida que disponga de estadísticas de la incidencia de enfermedades renales en Puerto Rico; y (6) para aprobar cualquier aumento en el número de estaciones autorizadas de una facilidad existente, se tendrá que demostrar que el mismo no conlleva un exceso de oferta para el área de servicio.
Según surge del expediente ante nuestra consideración, quedó demostrado que en la Sub-Región de Salud de Bayamón, BMA es la única facilidad acreditada por Medicare que está operando. La misma opera prácticamente al 100%, teniendo los pacientes que trasladarse a otros municipios o permanecer hospitalizados por no haber espacios en Bayamón para dializarse. • .
De igual manera, quedó demostrado que BMA opera 3 turnos diarios, de lunes a viernes, y sábados pon tres turnos diferentes de trabajo, por lo que se cumplió con el requisito de que las facilidades existentes deberán estar operando un mínimo de dos turnos diarios, seis veces por semana.
Asimismo, la recurrida propuso establecer 15 estaciones de hemodiálisis y estará localizada a menos de 15 minutos de hospitales, tales como el Hospital Hermanos Meléndez, Hospital Matilde Brenes y Hospital San Pablo. Dichos hospitales notificaron su intención y disponibilidad de ser hospital de apoyo para M.T.M., una vez se tenga la certificación para el ofrecimiento de los servicios.
Por otra parte, durante la vista celebrada desfiló evidencia referente a que el Municipio de Bayamón tuvo 195 casos activos (prevalencia) para el año 2004 y el total de pacientes de la región de Bayamón es de 466 casos activos (prevalencia). Para el 2005 había 272 pacientes para la Sub-Región según el Consejo Renal. Conforme la prueba desfilada, quedó establecida la existencia de una demanda insatisfecha de 32%.
Del informe del oficial examinador, en el cual la Secretaria del Departamento de Salud apoyó su decisión para la concesión del CNC en cuestión, surge que la recurrida cumplió razonablemente con los criterios específicos y las guías generales de la Ley Núm. 2, supra, y el Reglamento. Igualmente, entendió, que ésta estableció y demostró que existe la necesidad de la facilidad propuesta, así como los servicios que allí se prestarán.
Siendo así, no encontramos razón para revocar la resolución recurrida, toda vez que la Secretaria, conforme a su discreción, de acuerdo a lo resuelto en Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra, quedó convencida de que la recurrida demostró haber cumplido tanto con los criterios específicos y las guías generales de la Ley Núm 2, supra, y el Reglamento, así como que el establecimiento la facilidad de diálisis renal propuesta redundará en un beneficio sustancial para la comunidad a ser impactada.
Así pues, en ausencia de prueba que demuestre que el Departamento de Salud actuó de manera arbitraria, caprichosa o irrazonable, no intervendremos con las determinaciones y conclusiones hechas por éste en la resolución recurrida. Cruz Negrón v. Adm. de Corrección, supra; Otero v. Toyota, supra; Ramírez v. Depto. de Salud, supra.
Como segundo señalamiento de error, BMA nos señala que erró el Departamento de Salud al tomar conocimiento oficial de otros expedientes administrativos sin que le fuera solicitado por ninguna de las partes y sin que se les permitiera refutar dicha prueba.
Se ha resuelto que un tribunal puede tomar conocimiento judicial de procedimientos celebrados y de sentencias o resoluciones dictadas en cualquier causa seguida ante el mismo tribunal o cualquier otro tribunal *636 dentro de la misma jurisdicción, por tratarse de hechos cuya comprobación o determinación puede efectuarse de forma exacta e inmediata con un mero examen del expediente judicial. Guadalupe v. Saldaña, Pres. U.P.R., 133 D.P.R. 42 (1993). También se ha reconocido que “una agencia administrativa puede tomar conocimiento oficial de sus propios récords relacionados con litigios previos, interrelacionados, entre las mismas partes”. López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109 (1996).
De la norma y las expresiones jurisprudenciales se puede inferir que resulta indispensable —para la validez y corrección de la toma de — conocimiento oficial que el tribunal o la agencia administrativa brinde oportunidad a las partes de examinar la prueba y expresarse sobre la misma. Véase, D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Forum-Legis Editores S.A., 2001, pág. 170.
Surge del Informe de la Oficial Examinadora que ésta tomó conocimiento oficial “del hecho de que [Atlantis] tiene siete facilidades aprobadas a través de la Isla que no están en operación, lo cual le resta credibilidad a su testimonio de que en la sub-región de Bayamón no tienen que trasladarse a otros municipios para recibir sus servicios de diálisis". Igualmente se tomó conocimiento oficial de la Sentencia del caso del Tribunal de Apelaciones, Biomedical Applications Inc. v. Departamento de Salud, que recogía una admisión de Atlantis que afirmaba que restringir la apertura de facilidades de este tipo limitaba la libre competencia. [2]
Ahora bien, si bien es cierto que la Oficial Examinadora debió concederle a BMA la oportunidad de expresarse en relación a dicha prueba, no es menos cierto que del expediente administrativo ante nuestra consideración surge que la recurrida cumplió con todos y cada uno de los requisitos para la obtención del CNC.
Asimismo, se desprende de éste que si bien lo anterior se tomó en cuenta al momento de emitir la determinación, el peso dado a éste fue mínimo en relación a toda la demás prueba presentada.
En conclusión, creemos que no erró el Departamento de Salud al otorgarle el CNC a la recurrida.
IV
Por los fundamentos antes expuestos y de conformidad con el derecho citado, se confirma la determinación recurrida.
Notifíquese.
Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 6

1. El Departamento de Salud lo identificó con el número 6786.

2. Aun cuando BMA- con el fin de demostrar el exceso en la oferta de servicios de diálisis que se crearía con la aprobación del CNC a la recurrida-, nos informa mediante su "Réplica a Oposición a Recurso de Revisión Judicial” que en la actualidad, el Centro de Bayamón fue adquirido por éstos, contando con un CNC expedido el 31 de mayo de 2008 para la operación de 35 estaciones, no es menos cierto que con posterioridad a la Resolución Recurrida, el Departamento de Salud no extendió la vigencia del CNC de Atlantis. Así se desprende de la “Moción en Torno a Resolución de 13 de mayo de 2008” presentada por Atlantis.