JOSÉ MATOS VELÁZQUEZ, querellante y recurrente, *v.* PROCTOR MANUFACTURING CORP., querellada y recurrida.

Número: R-63-101        Resuelto: 9 de octubre de 1964

46

*Ismael Cardona,* abogado del recurrente; *Baker & Woods,* y *Luis F. Quetglas,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El demandante recurrente interpuso demanda de reclamación de salarios en la Sala de San Juan del Tribunal Superior, acogiéndose al procedimiento de la Ley Núm. 10 de 14 de noviembre de 1917. Alegó que la demandada recurrida explota un negocio lucrativo en Puerto Rico y realiza transacciones en el comercio interestatal y que contrató y utilizó los servicios del demandante desde enero de 1954 hasta el 23 de septiembre de 1961 en calidad de "Capataz" devengando un salario que fluctó entre $65 y $75 semanales; que la demandada le adeudaba $18,969 por razón de horas extras trabajadas en exceso de 40 horas semanales, 8 diarias, y en los séptimos días, que no le fueron compensadas. Pidió sentencia por dicha suma y por otra igual en concepto de penalidad.

La demandada contestó y alegó el haberle pagado toda la compensación a que el demandante tenía derecho de acuerdo con la ley. Admitió que se dedicaba a un negocio lucrativo y que realizaba transaciones en el comercio interestatal, y negó las demás alegaciones. Posteriormente la demandada solicitó permiso para radicar una contestación enmendada con el fin de alegar como defensa afirmativa que el demandante era un "ejecutivo" y por lo tanto no estaba cubierto por las leyes del trabajo aplicables en este caso. Hubo objeción del demandante a que se permitiera la contestación enmendada y después de haber sido ampliamente discutida la procedencia de dicha contestación enmendada en vista oral y mediante memorandos, la Sala sentenciadora la admitió. La contestación enmendada adicionó a la contestación anterior las siguientes: "Defensas Afirmativas:— 1) La querella deja de exponer hechos a base de los cuales pueda concederse un remedio al querellante. 2) Durante el período en controversia el querellante desempeñó labores de 'ejecutivo', por lo cual no tiene derecho al remedio solicitado." Visto el caso en sus méritos la Sala sentenciadora desestimó la demanda fundándose en que el demandante era un ejecutivo. En su recurso, el demandante levanta como error el haber permitido la Sala sentenciadora la radicación de la contestación enmendada. Consideraremos de momento esta cuestión procesal.

La demanda se radicó el 29 de septiembre de 1961. En esa fecha regía la Ley Núm. 10 de 14 de noviembre de 1917 a la cual se acogió el demandante. Esta Ley quedó derogada y sustituida por la Núm. 2 de 17 de octubre de 1961, que establece un procedimiento sumario para los casos de reclamaciones de obreros y empleados contra sus patronos. Con pocas variaciones, este estatuto siguió sustancialmente la pauta procesal de la Ley Núm. 10 de 1917 y al igual que ésta, dispone la Núm. 2 de 1961 que en los casos tramitados con arreglo a la misma, se aplican las Reglas de Procedi-

miento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de dicha Ley o con el carácter sumario del procedimiento que ella establece. La Ley Núm. 2 dispone expresamente, lo cual no aparecía en la Núm. 10 anterior, que el querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas y objeciones que no incluya en dicha alegación responsiva.

Sostiene el recurrente que esta disposición impedía la radicación de una contestación enmendada. Creemos, según resolvió la Sala sentenciadora, que no lo impide. La Regla 6.3 de las de Procedimiento Civil de 1958 señala ciertas defensas que deberán alegarse afirmativamente al responder a una alegación precedente. Muchas de las defensas ahí enumeradas, de prosperar, pueden hacer innecesario el litigar el pleito en su fondo. Otras no. La Regla 102 dispone que toda defensa de hecho o de derecho contra una reclamación en cualquier alegación, ya sea demanda, . . . se expondrá en la alegación respondiente que se haga a las mismas. No obstante, le da opción a la parte para que antes de responder levante, mediante moción, ciertas defensas que se enumeran. Estas defensas a ser levantadas por moción no se entenderán renunciadas por el hecho de que se formulen conjuntamente con la alegación respondiente, según esta Regla 10.2. De acuerdo con la 10.4, esas defensas de la Regla 10.2 han de discutirse y resolverse antes del juicio, a menos que el Tribunal ordene lo contrario.

Al estatuirse en la Ley Núm. 2—con conocimiento el Legislador de las pautas procesales contenidas en las Reglas mencionadas, que de otro modo se aplicarían a estas reclamaciones de salario de no disponerse de otra manera—que el querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, lo que se requirió es que tanto las defensas afirmativas de la Regla 6.3 como las defensas enumeradas en la Regla 10.2,

que de acuerdo con la 10.4 habrán de discutirse y decidirse antes del juicio, así como cualquier otra defensa u objeción, han de presentarse por la parte querellada en una contestación que lo comprenda todo: su respuesta a los méritos del caso y tales defensas o cualquier defensa, dado el carácter sumario de la acción. Se ha querido obviar en estas reclamaciones de salario la dilación inevitable que ocurre cuando a un demandado se le permite, como permiten las reglas ordinarias, levantar distintas defensas y obtener dictamen sobre ellas antes de contestar en los méritos. La idea es que la contienda en su fondo quede trabada prontamente.(¹)

La disposición aludida en la Sec. 3 de la Ley Núm. 2 no tiene el efecto de impedir que una alegación responsiva hecha según dispone la misma sea enmendada en un caso apropiado. La Regla 13.1 permite enmiendas a las alegaciones, con permiso del Tribunal en determinados casos, y dispone que el permiso se concederá liberalmente cuando la justicia así lo requiera. Ningún conflicto existe entre esta Regla 13.1 que presupone alegaciones ya hechas y lo dispuesto en la Sec. 3 de la Ley Núm. 2 que se refiere *al modo* de alegar distinto en este tipo de acciones judiciales.

En cuanto a este caso en particular se refiere, la demandada en su alegación responsiva hecha según dispone la Sec. 3 mencionada negó que le adeudara cantidad alguna al demandante por razón de salarios. Bajo esa negativa la contienda quedó trabada en su fondo sobre todo fundamento de hecho y de derecho que tendiera a derrotar la reclamación. Bajo dicha negativa, a la demandada le hubiera sido permisible demostrar a través del contrainterrogatorio o con prueba, que el demandante hacía el trabajo de un ejecutivo, resultando entonces como cuestión de derecho que carecería de

---

(¹) Indudablemente el Legislador conoce la tradicional práctica de litigar bajo el procedimiento ordinario en que de manera rutinaria y automática se interpone por moción separada, la defensa de falta de causa de acción, haya o no méritos en la misma, con la dilación consiguiente.

causa de acción o de derecho a pedir a tenor de las leyes del trabajo bajo las cuales reclama. El haberse permitido enmendar la contestación para exponer de modo expreso que el demandante era un ejecutivo, sin que se trate de uno de esos casos en que se requiere la interposición de una defensa afirmativa, de hecho benefició al demandante ya que antes del juicio quedó debidamente informado de esa alegación responsiva y en mejores condiciones para sostener con prueba su reclamación, o prepararse para impugnar la prueba en tal sentido. La Sala sentenciadora no cometió error de derecho ni de discreción al permitir la enmienda a alegación responsiva de la demandada.

Los otros planteamientos en este recurso atacan las conclusiones de hecho de la Sala sentenciadora a tenor de la apreciación que ella hiciera de la prueba. Copiamos las Conclusiones de Hecho:

"1. Que la querellada Proctor Manufacturing Corp., tiene establecido un negocio lucrativo y realiza transacciones en el comercio interestatal y utilizó los servicios del querellante desde el año 1954 hasta septiembre de 1961.

"2. Que en el año 1954 el querellante empezó a trabajar con la querellada como operario con un sueldo de $65.00 semanales y para septiembre 18 de 1959 fue designado a trabajar como supervisor en el departamento de 'coverage and surplage' [*sic*] con un sueldo de $75.00 semanales, cargo que desempeñó hasta mayo de 1961, fecha en que la querellada suspendió 2 supervisores y el querellante volvió a trabajar como operario por 3 semanas, al término de las cuales regresó a su trabajo de supervisor en el mismo departamento y con el sueldo anterior de $75.00 semanales, el que devengó hasta septiembre 23 de 1961 fecha en que fue despedido.

"3. Que en la planta de la demandada hay seis (6) departamentos separados físicamente unos de otros por secciones dentro de la misma fábrica, constituyendo cada departamento una unidad (T.E. págs. 236–237).

"4. Que los seis departamentos son los siguientes:
    1. Mango de la plancha (Handle)
    2. Reserva (Reservoir)

3. Termostato (Thermostate)
4. Cubierta de la plancha (Coverage and surplage) [*sic*]
5. Suela de la plancha (Sole plate)
6. Ensamblaje (Assembly)

"Que el querellante estaba a cargo del departamento de cubierta de la plancha, teniendo la supervisión de dicho departamento.

"5. Que cada uno de esos departamentos tenía la función de hacer una parte de las planchas que fabrica la querellada.

"6. Que el querellante en su departamento hacía recomendaciones que eran seguidas por la agencia y en una ocasión recomendó a los señores Jesús Berríos y Clemente Rodríguez y Héctor Piñero para trabajar los que fueron aceptados.

"7. Que el querellante y los demás 'foreman' o capataces de cada departamento se reunían con el gerente de la querellada y hacían recomendaciones, las que eran seguidas por la querellada.

"8. Que el sistema que utilizaba la demandada para nombramientos de empleados era el siguiente: Se hacían por mediación del Departamento del Trabajo, por solicitudes personalmente o por recomendaciones de los 'foreman'.

"9. Que los 'foreman' tenían facultad para cambiar un empleado de un departamento a otro.

"10. Que en caso de que se dañara una maquinaria y algunos empleados no tuvieran trabajo el 'foreman' tenía facultad para hablar con el 'foreman' de otro departamento para ponerlo a trabajar en su departamento. Que además tenían facultad si las circunstancias lo ameritaban para ordenar que se trabajaran horas extras.

"11. Que en el trabajo de supervisión el 'foreman' tenía facultad para rechazar el trabajo que no estuviera bien hecho. Asimismo los 'foreman' tenían facultad para excusar a los empleados cuando éstos alegaban estar enfermos.

"12. Que cuando había que suspender personal por economía los 'foreman' hacían la selección de quienes debían quedarse y en una ocasión un empleado de nombre Aquino estaba en la lista para ser eliminado y el querellante manifestó que lo necesitaba, se siguió su recomendación y permaneció en el trabajo.

"13. Que el querellante tenía facultad para despedir empleados de su departamento y en una ocasión encontró a un obrero

de apellido Berríos durmiendo en el cuarto de servicio y lo despidió, actuación que fue aceptada por la querellada.

"14. Que la gerencia se reunía con todos los 'foreman' y discutían problemas de la factoría.

"15. Que el querellante al igual que los demás 'foreman' tenían que preparar diariamente un informe por escrito de la labor realizada y exponer al gerente cualquier problema que surgiera.

"16. Que en relación con la ausencia de los empleados al trabajo el 'foreman' tenía que llenar un impreso y cada vez que faltaba el empleado el querellante le hacía una advertencia y si se le hacían a un empleado 3 advertencias durante el término de 90 días el 'foreman' pedía que se le despidiera y su recomendación era seguida.

"17. Que el querellante recibía instrucciones de la gerencia sobre la producción que debería hacer su departamento y si la misma no se hacía el 'foreman' tenía facultad para disponer que se trabajaran horas extras. Que si la labor se podía realizar en menos de 8 horas o si la maquinaria se rompía asimismo tenía facultad el querellante para despachar los empleados.

"18. Que el querellante mientras trabajó como operario trabajó horas extras en exceso de 8 horas diarias las que se le pagaron y mientras trabajó como supervisor desde septiembre de 1959 a septiembre de 1961 también trabajó un promedio de 3 horas extras diarias, las que no se le pagaron. Que el querellante mientras trabajaba como supervisor no ponchaba tarjetas.

"19. Que al escoger el personal de su departamento era función del querellante someterlos a prueba, darle adiestramiento y hacer su recomendación sobre si continuaban o no trabajando, recomendación que era seguida por la querellada.

"20. Que el querellante faltaba con frecuencia a su trabajo y en una ocasión faltó una semana pero se le pagó su semanal.

"21. Que en su departamento siempre había un promedio de 15 a 40 hombres trabajando bajo sus órdenes y supervisión.

"22. Que el ciento por ciento del trabajo del querellante era supervisar a los trabajadores bajo sus órdenes y adiestrar a los nuevos empleados. Véase Deposición del querellante Pág. 40 Exhibit 15 Ddo."

A la luz de los hechos que consideró probados, la Sala sentenciadora declaró sin lugar la reclamación al concluir que

de acuerdo con las leyes y reglamentos federales y con las leyes y reglamentos del Estado Libre Asociado aplicables, el demandante era un ejecutivo desde la fecha en que fue nombrado supervisor el 18 de septiembre de 1959 hasta que cesó en el cargo el 23 de septiembre de 1961. La Sala sentenciadora concluyó que al demandante se le pagó todo otro salario al cual tenía derecho antes de ocupar la posición de supervisor. Esa conclusión no está en controversia.

■ La Ley de Salario Mínimo, Núm. 8 de 5 de abril de 1941; la Ley Núm. 289 de 9 de abril de 1946 fijando un día de descanso por cada seis días de trabajo; la Ley Núm. 379 de 15 de mayo de 1948 que establece la jornada de trabajo en Puerto Rico y provee el pago doble de salario por las horas trabajadas en exceso de la jornada regular, según las mismas han sido enmendadas, y la nueva Ley de Salario Mínimo, Núm. 96 de 26 de junio de 1956, han excluido de sus disposiciones y de su protección a los administradores, ejecutivos y profesionales, según dichos términos han quedado definidos mediante reglamento de la Junta de Salarios Mínimo. Por otra parte, la Sec. 13(a) de la Ley de Normas Razonables del Trabajo federal, 52 Stat. 1060, excluye de las disposiciones de las Secs. 6 y 7 que establecen un salario mínimo y horas máximas de trabajo, a una persona empleada en la capacidad *bona fide* de un ejecutivo, un administrador o un profesional, según dichos términos se definan por reglamento del Administrador. 29 U.S.C.A. secs. 206, 207, 213(a).

■ El Administrador Federal ha descrito a un empleado que ocupa un empleo con capacidad *bona fide* de ejecutivo como aquél 1) cuyo deber primordial consiste de la dirección de la empresa en que está empleado o de la dirección de un departamento o subdivisión de la empresa habitualmente reconocido como tal; y 2) que habitual y regularmente dirija el trabajo de dos o más empleados de la empresa o de tal departamento o subdivisión; y 3) que tiene autoridad

para emplear o para despedir otros empleados o que sus sugestiones y recomendaciones en cuanto al empleo o despido y en cuanto al mejoramiento y ascenso o cualquier otro cambio de *status* de otros empleados han de merecer particular atención; y 4) que habitualmente y de ordinario ejerce poderes discrecionales; y 5) que no dedica más del 20% de sus horas de labor de la semana de trabajo a actividades que no están directa o íntimamente relacionadas con el desempeño del trabajo descrito en los apartados 1 al 4; . . . y 6) es un empleado que recibe compensación por sus servicios a base de un salario semanal no menor de $55 (ó de $30 a la semana si está empleado en Puerto Rico o en las Islas Vírgenes) [$100 semanales ó $75 semanales si está empleados en Puerto Rico, Islas Vírgenes o la Samoa americana], con exclusión de alimentos, vivienda u otros servicios, disponiéndose; . . . Code of Federal Regulations, 29 U.S.C.A., Appendix, Sec. 541.1 y Supl. anual, 1963.(²)

De acuerdo con los hechos que halló probados, la Sala sentenciadora determinó que el demandante como supervisor, con un sueldo semanal de $75 hacía el trabajo de un ejecutivo bajo todos los requisitos reglamentarios aplicables en su caso. Un estudio del récord nos convence que las conclusiones de hecho de la Sala sentenciadora, en virtud de las cuales el querellante resulta ser un ejecutivo como cuestión de derecho a la luz de los reglamentos mencionados, están sustancialmente sostenidas por la prueba practicada y en

---

(²)En la reglamentación local el trabajo de un empleado que se considera un ejecutivo a los efectos de las leyes del trabajo que lo excluyen de sus disposiciones, se ha descrito sustancialmente de igual manera que en la reglamentación federal. Véase el Reglamento en vigor desde enero 15, 1960, 29 R.&R.P.R. sec. 246e–8. No se hizo aplicable a los empleados ejecutivos, administrativos y profesionales cuyos servicios están cubiertos por la Ley de Normas Razonables del Trabajo de 1938, 29 U.S.C.A. 201–219. La reglamentación local anterior, Reglamento Núm. 13 de 8 de agosto de 1951, aparece copiada en varias de nuestras decisiones. *Morales* v. *Tribunal Superior*, 84 D.P.R. 123, 126 (1961); *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 D.P.R. 89, 94 (1961); *Sierra* v. *Mario Mercado e Hijos*, 81 D.P.R. 314 (1959).

su apreciación representan un balance racional y justo de la misma. Probado que el demandante era un ejecutivo, no tiene causa de acción en ley para reclamar por razón de horas extras trabajadas, aunque las trabajara según concluyó la Sala, ni por lo trabajado en el día de descanso.

*Se confirmará la sentencia dictada en este caso que declaró sin lugar la demanda.*