*808 TEXTO COMPLETO DE LA SENTENCIA
I
Se trata de una reclamación de salarios instada por varios empleados de la corporación apelada Warner Lambert, Inc. {‘‘Warner Lambert"), ante el Tribunal de Primera Instancia, Sala de Bayamón. Los empleados, que figuran en el presente recurso como apelantes, suscribieron una autorización para reducir su período de tomar alimentos.
Los apelantes cuestionan la validez de dichas autorizaciones, así como la omisión de la parte apelada de pagarles por otros conceptos, en particular, por el tiempo correspondiente a su segundo período para tomar alimentos cuando trabajaron horas extra, antes de 1990, y por el tiempo invertido en su lugar de empleo para cambiarse de ropa y vestir uniformes requeridos por la parte apelada.
Mediante sentencias individuales emitidas el 21 de mayo de 2004, el Tribunal de Primera Instancia declaró sin lugar las demandas de los trece apelantes.
Revocamos parcialmente dichos dictámenes, para reconocer que la mayoría de los apelantes tienen derecho a recibir compensación por el período envuelto en los cambios de ropa y por el pago del segundo período para consumir alimentos no pagado por la parte apelada antes de 1990. Confirmamos las sentencias apeladas en sus demás particulares y devolvemos el caso al Tribunal de Primera Instancia para que proceda a fijar las cuantías correspondientes.
II
Warner Lambert es una corporación autorizada a realizar negocios en Puerto Rico. Para la fecha de los hechos, Warner Lambert operaba una planta ubicada en el Municipio de Vega Baja, dedicada a la manufactura de productos farmacéuticos. Warner Lambert es miembro de la Asociación de Industriales de Puerto Rico.
En 1998, la planta pasó a ser propiedad de la corporación Parke Davis Pharmaceutical Partnership Limited {“Parke Davis”). Luego del comienzo del presente litigio, Warner Lambert y Parke Davis fueron adquiridas por Pfizer Pharmaceuticals, LLC {“Pfizer”).
Los apelantes son todos empleados o ex empleados de Warner Lambert o Parke Davis. Para los períodos pertinentes al presente recurso, trabajaban en las áreas de manufactura de las referidas compañías.
Los apelantes fueron reclutados entre 1972 y 1998. A la fecha de los dictámenes recurridos, la mayoría de ellos se había retirado. Hasta donde podemos determinar, sólo cuatro, Félix Marrero Nieves, Aguedo Pérez Colón, José Santiago González y Ángel Santiago Vélez, continuaban laborando para la parte apelada. De los restantes, la mayoría se retiró en 1994 o después. Sólo dos apelantes, Florentino Agosto Agosto y Félix Santiago Maldonado, se retiraron antes de 1994. 
Al momento de ser contratados, a los apelantes se le ofrecía una orientación. Durante este proceso, se les hacía entrega de un formulario en el que los empleados podían consentir a que se redujera la jomada de su período para tomar alimentos de una hora a media hora.
De acuerdo a las determinaciones del Tribunal de Primera Instancia, los apelantes no estaban obligados a consentir a la reducción de su período para tomar alimentos. Cuando no lo hacían, se les brindaba una hora para consumir sus alimentos.
*809 Todos los apelantes, sin embargo, eligieron suscribir la autorización para la reducción de dicho período. Ello les permitía terminar más temprano sus labores, y así no tenían que permanecer en la planta.
Los empleados disfrutaban de su período de tomar alimentos antes de comenzar su sexta hora de trabajo consecutivo.
Previo a 1990, la parte apelada no pagaba a los empleados por un segundo período para tomar alimentos. En 1984, la Asociación de Industriales presentó un pleito de sentencia declaratoria ante el Tribunal de Primera Instancia, Sala Superior de San Juan, donde alegó que los patronos de nuestra jurisdicción no tenían obligación de realizar dicho pago, Asociación de Industriales v. Secretario del Trabajo, Caso Civil Núm. 84-6364.
En agosto de 1990, el Tribunal de Primera Instancia falló a favor de la Asociación de Industriales y decretó que los miembros de la Asociación no tenían que pagar por el segundo período. Ninguno de los apelantes fue parte en dicho caso.
Posteriormente, mediante la Ley Núm. 41 de 17 de agosto de 1990, la Asamblea Legislativa enmendó la Ley 379 de 15 de mayo de 1948 para hacer claro que los patronos sí tenían esta obligación, si bien se permitió que los empleados renunciasen a dicho pago, cuando la jomada extraordinaria fuese menor de dos horas.
A la luz de lo anterior, la apelada cursó nuevas solicitudes a los empleados para autorizar la reducción del período para tomar alimentos en su jomada extraordinaria de trabajo o para obviar dicho período, cuando no trabajasen más de 2 horas extra. La firma de estos documentos fue voluntaria. Los apelantes también firmaron estas autorizaciones.
Las solicitudes eran entregadas por los apelantes a la parte apelada, la que se encargaba de enviar los formularios al Departamento del Trabajo y Recursos Humanos de Puerto Rico (“Departamento del Trabajo"). La parte apelada siempre tuvo la práctica de remitir las autorizaciones a la agencia.
El Tribunal de Primera Instancia determinó que todas las autorizaciones suscritas por los apelantes fueron presentadas ante el Departamento del Trabajo y autorizadas por dicha agencia. El Departamento del Trabajo nunca notificó a los apelantes de su aprobación de la solicitud para la reducción del término para tomar alimentos.
La prueba tendió a reflejar que el Departamento del Trabajo decomisó y destruyó los documentos correspondientes a los años 1972 a 1990. El Departamento del Trabajo no preparó un inventario de los documentos recibidos.
No obstante, la prueba estableció que el Departamento del Trabajo nunca desaprobó una estipulación de esta naturaleza ni revocó ninguno de los permisos.
Los apelantes, desde luego, estaban conscientes de que habían firmado los formularios. Antes del presente litigio, ninguno de ellos solicitó dejar sin efecto la autorización para la reducción en su período de tomar alimentos.
Para los años envueltos en la reclamación, la parte apelada había adoptado procedimientos internos y un Manual de Empleados. Entre otras cosas, la parte apelada requería a los trabajadores del área de manufactura de la planta utilizar uniformes o batas desechables. Los uniformes consistían de camisa de manga larga y pantalón largo, ambos de algodón y poliéster y zapatos de seguridad. A cada empleado se le proveían, libre de costo, once juegos del uniforme.
*810 El Tribunal de Primera Instancia determinó que el uniforme resultaba beneficioso para los empleados de la empresa, ya que éstos no tenían que utilizar su ropa para el trabajo, evitando su deterioro. Los empleados tampoco venían obligados a incurrir en gastos de limpieza y reparación de los uniformes, los que eran asumidos por la parte apelada.
Según las determinaciones del Tribunal, la colocación del uniforme no conlleva trabajo o esfuerzo adicional alguno, sino que es un proceso similar al de vestirse con cualquier pieza de ropa casual.
Hasta 1994, la parte apelada permitió a los empleados llegar a la planta vestidos con el uniforme provisto por la empresa. Luego de ese momento, la parte apelada le prohibió a los empleados remover los uniformes de las facilidades de la empresa.
Los empleados se cambiaban de ropa en las áreas de los “lockers” de la planta o en los baños. Los uniformes permanecían en ciertos “lockers” designados para estos fines, donde eran recogidos por la empresa dedicada a su limpieza, la que también se encargaba de traer uniformes limpios al mismo lugar. Los uniformes limpios se traían una o dos veces por semana.
Conforme a las determinaciones del Tribunal de Primera Instancia, el proceso de colocarse los uniformes generalmente tomaba hasta 12 minutos. Los empleados tenían que cambiarse de ropa dos veces al día, al entrar y al salir, lo que consumía alrededor de 6 minutos cada vez.
Los apelantes trabajaron muchos años bajo las condiciones mencionadas.
En 1993, varios de los apelantes instaron la presente acción de reclamación de salarios contra la parte apelada ante el Tribunal de Primera Instancia, DPE1993-0281. En su demanda, los apelantes alegaron que los acuerdos de reducción o renuncia a su período de tomar alimentos no eran válidos, por lo que la parte apelada les debía los salarios correspondientes a dichos períodos por todos los años en que los apelantes habían laborado para la empresa.
La parte apelada contestó la demanda y negó las alegaciones.
En 1996, otro grupo de empleados presentó una reclamación de salarios contra la parte apelada por el tiempo invertido en el cambio de ropa, DPE1996-0572. La parte apelada contestó dicha reclamación.
En 1997, se presentó otra demanda de reclamación de salarios ante el Tribunal de Primera Instancia, levantando planteamientos similares a los del caso de autos, DPE1997-0999. Este caso fue consolidado con la demanda original, DPE1993-0281.
En algún momento, los apelantes enmendaron sus demandas para reclamar en el caso de autos salarios por el tiempo dedicado al cambio de ropa. La parte apelada contestó dicha reclamación.
Luego de numerosos trámites, se comenzó una vista en su fondo, la que se extendió del 2001 al 2004. Ambas partes presentaron evidencia testifical y documental en apoyo a sus respectivas posiciones.
En particular, se presentaron los récords de empleo de los apelantes, de los cuales no se desprendía que la parte apelada les adeudara suma alguna por concepto de salarios.
Mientras la vista se estaba llevando a cabo, el 14 de marzo de 2002, el Tribunal de Primera Instancia emitió una sentencia parcial final en el caso DPE1996-0572. En su sentencia, el Tribunal determinó que, a partir de 1994, cuando la parte apelada había requerido a los empleados que se cambiaran a su uniforme en las *811 facilidades de la planta, el tiempo invertido en dicha actividad debía ser considerado como parte de su jomada de trabajo. 
Durante la pendencia de los procedimientos en las demandas de autos, los apelantes cambiaron de representación profesional. Su nuevo abogado planteó que las autorizaciones para la reducción del período de tomar alimentos no eran válidas porque el Departamento del Trabajo nunca les notificó que había aprobado la reducción. La apelada se opuso.
Luego de otros trámites, el 21 de mayo de 2004, mediante sentencias individualmente emitidas para cada uno de los apelantes, el Tribunal de Primera Instancia declaró sin lugar las reclamaciones de los apelantes.
En su dictamen, el Tribunal de Primera Instancia concluyó que los apelantes no tenían derecho a reclamar salarios por el período para tomar alimentos, ya que habían expresamente consentido a la reducción de dicho período. El Tribunal rechazó la contención de los apelantes de que los formularios firmados por ellos para la reducción del período para tomar alimentos no eran válidos porque el Departamento del Trabajo nunca les notificó a los apelantes que había autorizado la reducción.
El Tribunal concluyó que los apelantes tampoco podían reclamar pagos por el período para tomar alimentos durante horas extra, ya que, para antes de 1990, venían vinculados por la sentencia declaratoria emitida por el Tribunal de Primera Instancia en Asociación de Industriales v. Secretario del Trabajo, Caso Civil Núm. 84-6364. Luego de esta fecha, los apelantes habían suscrito acuerdos para la reducción o renuncia de dicho período, los que el Tribunal entendió eran válidos.
En cuanto al tiempo invertido para cambiarse de ropa, el Tribunal concluyó que, luego de 1994, dicho tiempo efectivamente formaba parte de la jomada de trabajo y debía ser compensado, a razón de 12 minutos por día de trabajo por empleado. No obstante, el Tribunal declinó conceder remedio alguno a los apelantes. Razonó que su dictamen debía tener efecto meramente prospectivo.
Insatisfechos con la decisión del Tribunal de Primera Instancia, los apelantes acudieron ante este foro.
III
En su recurso, los apelantes plantean varios señalamientos de error dirigidos a cuestionar la conclusión del Tribunal de Primera Instancia de que los apelantes consintieron válidamente a la reducción de su período para tomar alimentos. Los apelantes también plantean que el Tribunal erró al no concederles remedio alguno por el período invertido por ellos para cambiarse de ropa.
La Ley Núm. 379 de 15 de mayo de 1948, según enmendada, establece la jomada máxima de trabajo en nuestra jurisdicción, la que generalmente consiste de ocho (8) horas al día o cuarenta (40) horas a la semana, 29 L.P.R.A. sec. 272; Sánchez v. Sylvania Lighting, 167 D.P.R. __ (2006); 2006 J.T.S. 36, a la pág. 984; Hernández v. Espinosa, 145 D.P.R. 248, 267 (1998).
La Ley establece una causa de acción por horas extras trabajadas en exceso de la jomada regular de trabajo. En estos casos, la compensación apropiada consiste, no sólo en las cantidades dejadas de pagar, sino también una suma igual por concepto de liquidación de daños y perjuicios, así como el pago de las costas, gastos y honorarios de abogado. 29 L.P.R.A. sec. 282; Sánchez v. Sylvania Lighting, 2006 J.T.S. 36, a la pág. 985; Colón v. Syntex, 162 D.P.R. _ (2004), 2004 J.T.S. 123, a las págs. 22-24; Almodovar v. Margo Farms del Caribe, Inc., 148 D.P.R. 103, 111 (1999); Vega v. Yiyi Motors, Inc., 146 D.P.R. 373, 392-393 (1998); Acevedo v. P.R. Sun Oil Co., 145 D.P.R. 752, 758 (1998).
El peso de la prueba para establecer que se ha realizado la labor en exceso corresponde al obrero, quien *812 también debe establecer el número de horas extras trabajadas. Rodríguez v. Syntex, 160 D.P.R. _ (2003), 2003 J.T.S. 147, a la pág. 157; Srio. del Trabajo v. Vélez, 86 D.P.R. 585, 591-592 (1962); Lebrón v. P.R. Ry., Lt. & P. Co., 78 D.P.R. 683 (1955); Sierra v. Eastern Sugar Associates, 71 D.P.R. 888 (1950).
La Ley requiere a los patronos conceder a los empleados un período para tomar alimentos dentro de la jornada regular. Dicho período deberá comenzar a disfrutarse “no antes de concluida la tercera ni después de comenzada la sexta hora de trabajo consecutiva, de manera que en ningún momento se requiera a los empleados trabajar durante más de cinco (5) horas consecutivas sin hacer una pausa en las labores para alimentarse”. 29 L.P.R.A. see. 283.
La Ley requiere a los patronos brindar a sus empleados un segundo período para tomar alimentos cuando se les requiere trabajar más de cinco horas en exceso de la jomada regular. 29 L.P.R.A. see. 283.
El referido precepto establece que “[tjodo patrono que emplee o permita que un empleado trabaje durante el período destinado para tomar los alimentos vendrá obligado a pagarle por dicho período o fracción del mismo un tipo de salario igual al doble del tipo convenido para las horas regulares”. 29 L.P.R.A. sec. 283; véase, Acevedo v. P.R. Sun Oil Co., 145 D.P.R. a la pág. 765; Almodóvar v. Cervecería India, Inc., 103 D.P.R. 407, 409 (1975); Concreto Mixto, Inc. v. Tribunal Superior, 92 D.P.R. 808, 809 (1965): Martínez v. Com. Oil Ref. Co., Inc., 92 D.P.R. 693, 695 (1965); Salgado v. Tribunal Superior, 92 D.P.R. 367, 371-372 (1965); Matos Velázquez v. Proctor Manufacturing Corp., 91 D.P.R. 45, 54 (1964); Pamblanco v. Union Carbide, 90 D.P.R. 712, 721-722 (1964); Sucn. Meléndez v. Central San Vicente, 86 D.P.R. 398 (1962).
La Ley, sin embargo, autoriza a que, por acuerdo entre los empleados y su patrono, se reduzca el período para tomar alimentos. El Art. 14 del estatuto, dispone, en cuanto a este particular:

“Los períodos señalados para tomar los alimentos que ocurran dentro o fuera de la jornada regular del empleado pueden ser menores de una hora. Si por razón de conveniencia mutua para el empleado y su patrono, y por estipulación escrita de ambos, se fijare un período menor éste no podrá nunca ser menor de treinta (30) minutos, excepto para croupiers, enfermeras, enfermeros y guardianes de seguridad que podrá ser de hasta un mínimo de veinte (20) minutos. En el caso de los períodos de tomar alimentos que ocurran fuera de la jornada regular del empleado, cuando no se trabaja más de dos (2) horas después de la jornada regular, éstos podrán ser obviados mediante acuerdo escrito entre empleado y patrono, para beneficio mutuo y sin la intervención del Secretario del Trabajo y Recursos Humanos.

Las estipulaciones a esos efectos, una vez aprobadas por el Secretario del Trabajo y Recursos Humanos, serán válidas indefinidamente y ninguna de las partes, sin el consentimiento de la otra, si continúa la misma relación de trabajo, podrá retirar su consentimiento a lo estipulado hasta después de un año de ser efectiva la estipulación.

Cuando los empleados estén unionados, la estipulación para reducir el período señalado para tomar alimentos se podrá efectuar mediante convenio colectivo o acuerdo escrito entre la unión y el patrono, sin que sea necesario en tal caso el consentimiento individual de los empleados representados por la unión, ni la aprobación del Secretario del Trabajo y Recursos Humanos, siendo en tales casos efectiva la reducción del convenio o según se provea en el convenio o acuerdo. ...

29 L.P.R.A. see. 283.
La Ley autoriza al Secretario del Trabajo y Recursos Humanos a adoptar reglamentos para dar vigencia a *813 este tipo de convenios. 29 L.P.R.A. see. 283. A tenor con dicha autorización, el 27 de agosto de 1990, el Secretario adoptó el Reglamento Núm. 4334 para, entre otras cosas, regular la expedición de permisos para reducir el período de tomar alimentos.
En la situación de autos, según hemos visto, el Tribunal de Primera Instancia determinó que todos los apelantes habían suscrito formularios para autorizar la reducción de su período para tomar alimentos. El Tribunal de Primera Instancia determinó que los apelantes habían otorgado dichos convenios de forma voluntaria, por lo que no podían cuestionar, en esta etapa, la reducción a la que habían consentido. No estamos en posición de intervenir con dicha determinación.
La norma, según se conoce, es que la aquilatación de la prueba realizada por el Tribunal de Primera Instancia merece deferencia y que las determinaciones formuladas por dicho foro no deben ser alteradas por el tribunal apelativo, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Argüello v. Argüello, 155 D.P.R. 62, 78-79 (2001); Colón y otros v. K-Mart y otros, 154 D.P.R. 510, 520 (2001); Orta v. Padilla, 137 D.P.R. 927, 937 (1995); Rodríguez Oyola v. Machado Díaz, 136 D.P.R. 250, 258 (1994); véase, además, la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2.
Los apelantes alegan que el Tribunal de Primera Instancia erró al concluir que los acuerdos habían sido aprobados por el Departamento del Trabajo, ya que, en cuanto a algunos de ellos, no se presentó evidencia de que hubieran sido aprobados por dicha agencia, según lo requiere la Ley.
Lo cierto es que durante el juicio se estableció que el Departamento del Trabajo había decomisado y destruido sus récords de este tipo de documentos para los años 1972 a 1990, por lo que la prueba señalada por los apelantes resulta, en esta etapa, inexistente. La parte apelada presentó copia de las solicitudes firmadas por los empleados y estableció que los documentos preparados con posterioridad al 1990 habían sido aprobados por la agencia.
La parte apelada explicó que durante el período en controversia, su práctica constante había sido la de enviar las solicitudes al Departamento del Trabajo y que éstas siempre habían sido autorizadas. Los funcionarios del Departamento del Trabajo también declararon que no se habían denegado solicitudes de esta naturaleza.
Consideramos, en estas circunstancias, que el Tribunal de Primera Instancia podía concluir, según lo hizo, que la empresa había seguido su práctica acostumbrada y que los formularios efectivamente habían sido enviados a la agencia y aprobados.
No debe olvidarse que el Tribunal de Primera Instancia se encuentra en mejor posición que este foro para apreciar la totalidad de la prueba desfilada ante sí y adjudicar los hechos. Argüello v. Argüello, 155 D.P.R. a la pág. 79; Trinidad v. Chade, 153 D.P.R. 280, 291 (2001); Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49-50 (1998).
Los apelantes plantean que los permisos firmados por ellos para la reducción de su período para tomar alimentos no fueron efectivos porque la agencia nunca les notificó de la aprobación de dichos permisos. Los apelantes alegan que este tipo de documentos no constituyen contratos entre los empleados y su patrono, sino “peticiones administrativas”, que están sujetas al trámite posterior ante el Departamento del Trabajo. Los apelantes sugieren que dicho trámite es de naturaleza cuasi-adjudicativa, por lo que está sujeto a los requisitos de notificación del debido proceso de ley, actualmente codificados en la Ley de Procedimiento Administrativo Uniforme, véase, 3 L.P.R.A. sec. 2151.
Al no habérseles notificado de la determinación del Departamento del Trabajo, los apelantes alegan que la *814 decisión de la agencia nunca advino final, por lo que la apelada estaba impedida de reducir su período para tomar alimentos, según lo acordado. No estamos de acuerdo con dicha interpretación.
El procedimiento para la aprobación de las solicitudes para la reducción del período para tomar alimentos está actualmente gobernado por el Art. VI del Reglamento Núm. 4334 del Departamento del Trabajo. El Reglamento requiere que la solicitud del permiso se presente mediante acuerdo entre el patrono y los empleados. Se dispone que la solicitud sea evaluada por el Negociado de Normas, quien determina si se aprueba el permiso. No se requiere que el permiso sea notificado a las partes, una vez aprobado.
La prueba durante el juicio reflejó que el Departamento del Trabajo nunca ha tenido la práctica de notificar este tipo de determinaciones a los empleados. Ello implica, desde luego, que si la efectividad de este tipo de convenio dependiera de que la agencia notificara a todas las partes de su aprobación, ninguno de los convenios para la reducción del período para tomar alimentos suscritos en nuestra jurisdicción durante las últimas décadas sería válido. Ello, sin duda, ocasionaría un disloque considerable a los patronos que han venido descansando en las aprobaciones expedidas por la agencia.
No consideramos que el trámite de este tipo de solicitud requiera indefectiblemente que todas las partes sean notificadas. No entendemos que se trate, según sugieren los apelantes, de un procedimiento adjudicativo, sujeto a las garantías establecidas para este tipo de proceso cuasi-judicial, por la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2151.
Conforme se desprende de la Ley 379, se trata más bien de un permiso gubernamental que se tramita en un contexto no adversativo. En estos casos, según se conoce, la notificación se cursa más bien a la parte solicitante, sin que sea necesaria la notificación a todos los posibles afectados, si éstos no han comparecido expresamente ante la agencia administrativa. 
En la situación de autos, los apelantes suscribieron los formularios preparados por la parte apelada. Los apelantes conocían que habían consentido a la reducción de su período para tomar alimentos y siempre estuvieron en posición de impugnar dicha actuación, sin que hubieran intentado hacerlo sino hasta la presentación de su demanda. En estas circunstancias, no entendemos que los acuerdos firmados hubieran carecido de validez.
Otros paneles de este Tribunal han rechazado el argumento esgrimido en este caso por los apelantes. Véase, Rodríguez Rosado y Otros v. Syntex (F.P.), Inc., KLCE-2004-01040 (resolución del 8 de septiembre de 2004); Sánchez Isaac et al. v. Sylvania Lighting Co., KLAN-2003-00477 (sentencia del 31 de octubre de 2003).
Los apelantes plantean que el Tribunal de Primera Instancia erró al concluir que ellos no tenían derecho a cobrar un segundo período para tomar alimentos cuando hubiesen trabajado horas extra. La prueba estableció, en este sentido, que antes de 1990, la parte apelada nunca pagó a los apelantes por este concepto.
El Tribunal de Primera Instancia, según hemos visto, entendió que los apelantes estaban vinculados por lo resuelto en el caso Asociación de Industriales v. Secretario del Trabajo, caso civil núm. 84-6364, donde se declaró que los patronos de la Asociación de Industriales no venían obligados a realizar este tipo de pagos. Luego de 1990, aunque se enmendó la Ley 379 para aclarar que los patronos venían obligados a proveer a los empleados un segundo período para tomar alimentos, los apelantes suscribieron renuncias, por lo que a partir de dicha fecha, realmente no existe controversia entre las partes.
Cabe señalar que el dictamen del Tribunal en el caso Asociación de Industriales v. Secretario del Trabajo resulta claramente incorrecto.
*815 En Acevedo v. P.R. Sun Oil Co., el Tribunal Supremo de Puerto Rico aclaró que, cuando menos desde 1974, los trabajadores de nuestra jurisdicción gozaban del derecho a un segundo período para tomar alimentos cuando hubiesen trabajado más de un período de 5 horas corridas. 145 D.P.R. a las págs. 760-770.
Según el Tribunal Supremo, las enmiendas sobre este particular introducidas a la Ley 379 en 1990 no introdujeron un cambio en el ordenamiento, sino que aclararon la norma que siempre había estado vigente. Acevedo v. P.R. Sun Oil Co., 145 D.P.R. a la pág. 763.
Tampoco entendemos que el dictamen declaratorio emitido por la Sala de San Juan en el caso Asociación de Industriales v. Secretario del Trabajo pueda ser opuesto a los apelantes, quienes no fueron parte en dicho procedimiento.
La defensa de cosa juzgada, según se conoce, requiere, para su aplicación, que concurra “la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron”. 31 L.P.R.A. sec. 3343; 32 L.P.R.A. sec. 1793; Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. _ (2003), 2003 J.T.S. 33, a la pág. 634; Fatach v. Triple S, Inc., 147 D.P.R. 882, 889 (1999); Aponte v. Román, 145 D.P.R. 477, 488-489 (1998); Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 219 (1992); Díaz v. Navieras de P.R., 118 D.P.R. 297, 304-305 (1987); A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 761 (1981); Pagán Hernández v. U.P.R., 107 D.P.R. 720, 732 (1978); Millán v. Caribe Motors Corp., 83 D.P.R. 494, 506-507 (1961).
En el presente caso, los apelantes no fueron parte en el caso Civil Núm. 84-6364 ni tuvieron la oportunidad de ser escuchados sobre la controversia. Tampoco guardan relación de mutualidad con las partes en dicho procedimiento. Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. a la pág. 220; P.I.P. v. C.E.E., 120 D.P.R. 580, 605 (1988); A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. a la pág. 766; Pol Sella v. Lugo Christian, 107 D.P.R. 540, 549 (1978).
No está envuelta la adjudicación, como tal, de algún hecho esencial, que pudiera operar como impedimiento colateral contra su reclamación. Fatach v. Triple S, Inc., 147 D.P.R. a la pág. 889; Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 464 (1996); Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. a la pág. 221; A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. a la pág. 762; véase, Aponte v. Román, 145 D.P.R. 477 (1998).
En estas circunstancias, debemos concluir que el error se cometió y que los apelantes tienen derecho a que se les pague por el trabajo llevado a cabo durante el período para tomar alimentos que hubiera correspondido al tiempo extra trabajado entre 1974 y 1990. Compárese, Sánchez Isaac et al. v. Sylvania Lighting Co., KLAN-2003-00477 (sentencia del 31 de octubre de 2003).
Los apelantes también alegan que el Tribunal erró al no concederles remedio alguno por el tiempo invertido por ellos en el cambio de ropa. El Tribunal de Primera Instancia, según hemos visto, determinó que, en promedio, cada empleado se veía forzado a invertir 12 minutos al día en dicho proceso. El Tribunal entendió que, a partir de 1994, cuando a los empleados se les requirió efectuar dicho cambio dentro de la planta, dicho período debía entenderse parte de su jomada de trabajo.
No obstante, el Tribunal de Primera Instancia rehusó a conceder remedio alguno a los apelantes por este concepto.
Lo cierto es que, según hemos visto, mediante la sentencia emitida el 14 de marzo de 2002 en el caso DPE1996-0572, otra de las Salas del Tribunal de Primera Instancia ya había adjudicado que la parte apelada tenía la obligación de pagar a sus empleados por este concepto. A diferencia de la situación de los apelantes con relación al caso civil núm. 84-6364, la parte apelada sí participó activamente en el caso DPE1996-0572, y tuvo *816 una plena oportunidad de ser escuchada en tomo a la controversia.
Los apelantes señalan que dicho dictamen constituye impedimento colateral en el presente recurso, puesto que se adjudicó un hecho esencial a la presente controversia, viz, que el período consumido en el cambio de ropa constituia parte de la jomada de trabajo de los empleados de la planta. Fatach v. Triple S, Inc., 147 D.P.R. a la pág. 889; Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. a la pág. 464; Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. a la pág. 221.
El Tribunal de Primera Instancia, en cualquier caso, arribó a la misma conclusión en el presente procedimiento, si bien declinó conceder compensación alguna a los apelantes. El Tribunal entendió que la norma no era clara y eligió conferir carácter prospectivo a su dictamen. Creemos que el Tribunal erró.
La discreción para conferir aplicación prospectiva o retroactiva a un dictamen jurídico presupone más bien un cambio y no una "aclaración" del derecho. Véanse, Isla Verde Rental v. García, 165 D.P.R. _ (2005), 2005 J.T.S. 124, a la pág. 105; Datiz v. Hospital Episcopal, 163 D.P.R. _ (2004), 2004 J.T.S. 159, a las págs. 237-238; Asoc. Fcias. Com. v. Depto. de Salud, 157 D.P.R. 76, 79-80 (2002); Dávila Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483, 499 (1999); Acevedo v. P.R. Sun Oil Co., 145 D.P.R. a las págs. 769-770; Rexach Const. Co., Inc. v. Mun. de Aguadilla, 142 D.P.R. 85, 87 (1996); Quiles Rodríguez v. Supte. Policía, 139 D.P.R. 272, 277 (1995); Gorbea Vallés v. Registrador, 131 D.P.R. 10, 16-17 (1992).
Ello se produce más bien cuando el Tribunal Supremo de Puerto Rico revoca y deja sin efecto un precedente autoritario. Naturalmente, la discreción para tomar este tipo de decisión corresponde a nuestro más alto foro judicial, que es el encargado de pautar el derecho en nuestra jurisdicción, y no los tribunales inferiores.
Según ha explicado el Tribunal Supremo de los Estados Unidos:

“It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained, the paradigm case arising when a court expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct. Since the question is whether the court should apply the old rule or the new one, retroactivity is properly seen as a matter of choice of law, ‘a choice ... between the principle of forward operation and that of relation backward’. ”

James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534-535 (1991).
En la situación de autos, no hay envuelto cambio alguno en el ordenamiento que pueda dar lugar a una aplicación prospectiva del dictamen del Tribunal. Al contrario, la decisión del Tribunal de Primera Instancia meramente envuelve la aplicación de los principios establecidos por la Ley 379 (pago por tiempo trabajado en exceso de la jornada legal) al conjunto de hechos presentados por las partes litigantes.
No percibimos razón alguna para eximir a la parte apelada de pagar a los apelantes por la totalidad del tiempo trabajado por ellos, mediante la aplicación “prospectiva” del dictamen del Tribunal.
Habiendo determinado el Tribunal de Primera Instancia que el tiempo invertido por los apelantes en el cambio a su uniforme en la planta constituye, con posterioridad a 1994, parte de la jornada legal de trabajo, los apelantes que cualifican para dicho pago tienen derecho a cobrar por este concepto.
En resumen, consideramos que los apelantes tienen derecho a: (1) cobrar por el tiempo correspondiente al segundo período para tomar alimentos cuando trabajaron horas extras entre 1974 y 1990, y (2) cobrar por el tiempo invertido en el cambio de uniforme, con posterioridad a 1994, a razón de 12 minutos adicionales por día *817 de trabajo. Los apelantes tienen derecho a cobrar una penalidad equivalente a la suma adeudada conforme a lo dispuesto por la Ley, 29 L.P.R.A. sees. 282 y 283. También tienen derecho a las costas, gastos y a una partida de honorarios de abogado, que entendemos no debe ser menor del 25% del total de lo adeudado, en atención a la dificultad del presente litigio. López Vicil v. ITT Intermedia, Inc., 143 D.P.R. 574, 582 (1997).
El Tribunal de Primera Instancia deberá fijar las cantidades correspondientes para cada uno de los apelantes, en atención a su récord individual de empleo.
Por los fundamentos expresados, se revocan parcialmente las sentencias apeladas, en cuanto a los dos extremos indicados (el derecho de los empleados a cobrar por el tiempo correspondiente al segundo período para tomar alimentos cuando trabajaron horas extras entre 1974 y 1990, y el tiempo invertido en el cambio de uniforme, con posterioridad a 1994). Se confirman las sentencias apeladas en cuanto a sus demás particulares. Se devolverá el expediente al Tribunal de Primera Instancia para procedimientos consistentes con este recurso.
Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 22
1. Los apelantes en el presente caso son los siguientes empleados: Florentino Agosto Agosto, Luis Cintrón Rosario, Ramón Córdova López, Hipólito García Pérez, Edith Gómez González, Antolino Marrero Ferrer, Félix Marrero Nieves, Aguedo Pérez Colón, Jaime Rodríguez Salvá, Francisco Rosado Ayala, José A. Santiago González, Félix Santiago Maldonado y Ángel Santiago Vélez.
Otros tres empleados, Arturo Ayala Matos, José Monroig Prieto y Wilfredo Marín Huertas comparecieron inicialmente como apelantes. La reclamación de éstos, sin embargo, fue desestimada mediante sentencia parcial emitida por este Tribunal el 28 de noviembre de 2005, habida cuenta que sus demandas habían sido trasladadas a otras Salas por el Tribunal de Primera Instancia y que no habían sido incluidas en las sentencias emitidas por dicho Tribunal.
2. Según se expone en el recurso de apelación, la información pertinente para cada apelante es la siguiente: Florentino Agosto Agosto comenzó a trabajar con la parte apelada en 1972 y cesó en 1992; Luis Cintrón Rosario comenzó en 1974 y cesó en 1997; Ramón Córdova López comenzó en 1972 y cesó en 1997; Hipólito García Pérez comenzó en 1981 y cesó en 1994; Edith Gómez González comenzó en 1973 y cesó en 1997; Antolino Marrero Ferrer comenzó en 1981 y cesó en 1994; Félix Marrero Nieves comenzó en 1988 y, a la fecha de la sentencia, continuaba en su trabajo; Aguedo Pérez Colón comenzó en 1978 y, a la fecha de la sentencia, continuaba en su trabajo; Jaime Rodríguez Salvá comenzó en 1988 y cesó en 1996; Francisco Rosado Ayala comenzó en 1982 y cesó en 1995; José Santiago González comenzó en 1981 y, a la fecha de la sentencia, continuaba en su trabajo; Félix Santiago Maldonado comenzó en 1981 y cesó en 1986; Ángel Santiago Vélez comenzó en 1974 y, a la fecha de la sentencia, continuaba en su trabajo.
3. La sentencia parcial emitida en el caso DPE1996-0572 fue apelada ante este Tribunal. Antes de que este foro tuviera la oportunidad de adjudicar el asunto, las partes llegaron a una transacción.
4. Por ejemplo, la validez de un contrato de compraventa de un inmueble suscrito entre dos partes que requiera la aprobación de la Administración de Reglamentos y Permisos (digamos, por estar envuelta una segregación) no depende de que la agencia notifique de su aprobación a ambas partes. En estos casos, aunque la efectividad del contrato está supeditada a la condición suspensiva de la aprobación de la segregación, no se requiere que las dos partes comparezcan ante la agencia. Basta que uno de ellos tramite la autorización. La decisión de la agencia, de ordinario, se notifica tan solo al solicitante.
5. Presumiblemente, los dos apelantes que se retiraron antes de 1994, Florentino Agosto Agosto y Félix Santiago Maldonado, no tienen derecho a cobrar suma alguna por este último concepto.